Charles Eugene RHODES et al.,
Plaintiffs-Appellants,

v.

CITY OF CHICAGO in Trust For the
USE OF SCHOOLS et al.,
Defendants-Appellees.

No. 74-1400

United States Court of Appeals,
Seventh Circuit.

Argued Feb. 13, 1975.

Decided April 28, 1975.

Albert Brooks Friedman, Chicago, Ill., for plaintiffs-appellants.

Albert E. Jenner, Jr. and John G. Stifler, James R. Thompson, U. S. Atty., Gary L. Starkman and John W. Cooley, Asst. U. S. Attys., Chicago, Ill., for defendants-appellees.

Before CASTLE, Senior Circuit Judge, PELL, Circuit Judge, and JAMESON, Senior District Judge.*

JAMESON, Senior District Judge.

This is an appeal from an order granting summary judgment to the defendants-appellees in an action wherein plaintiffs-appellants sought declaratory, injunctive and monetary relief, alleging that the land acquisition policies of the Chicago Board of Education violated plaintiffs' rights under the Fifth and Fourteenth Amendments, as well as under 42 U.S.C. §§ 1981, 1982, 1983, 1985, 3601, 3602, 3603, 3604, 4651 and 4655.

### Background

Plaintiffs are eight black homeowners and one white homeowner who resided in a black neighborhood on the South Side of Chicago. In June, 1972 the Chicago Board of Education, acting pursuant to its condemnation powers, caused plaintiffs' homes to be appraised in preparation for the expansion of an elementary school. On September 8, 1972, defendant Redmond, General Superintendent of Chicago Schools, wrote the plaintiffs offering to purchase their homes for amounts substantially lower than the prices at which they were appraised. A condemnation action was filed on December 8, 1972 in the Circuit Court of Cook County. This action was started on June 5, 1973.[1] An amended complaint was filed on September 26, 1973.

### Amended Complaint

The amended complaint alleged, *inter alia*, that the defendants had made offers for plaintiffs' properties in amounts below their appraised and fair market values because of plaintiffs' race. Specifically it was alleged that on May 15, 1973 defendants Girard and Righeimer, attorneys representing the Chicago Board of Education and the City of Chicago in Trust for the Use of Schools,[2] made representations (to unspecified per-

---

* Senior District Judge William J. Jameson of the District of Montana is sitting by designation.

1. The plaintiffs brought their action individually and "on behalf of all others similarly situated", who had been subjected to the allegedly discriminatory policies of the Chicago Board of Education with respect to the exercise of its eminent domain powers.

2. City of Chicago in Trust for the Use of Schools is the legal entity which exercises eminent domain powers in behalf of the Chicago Board of Education.

sons) "that the properties in question . . . were worth less money because they were now owned by persons of the Negro race, that the white owners in the case were also in the same position because of the neighborhood, that the purchase prices under the Federal Housing Authority insured mortgages [3] did not represent real value, and that the City of Chicago in Trust for the Use of Schools was hiring new appraisers to make appraisals in an amount lower than those already in possession of the defendants for the purposes of trial . . . ."

It was alleged further that the defendants, including the Secretary of the Department of Health, Education, and Welfare (H.E.W.), were violating the plaintiffs' rights under the Fifth and Fourteenth Amendments, the Civil Rights Act (42 U.S.C. §§ 1981 et seq.), the Fair Housing Act (42 U.S.C. §§ 3601–04), and the Uniform Relocation Assistance and Real Property Acquisition Act (42 U.S.C. §§ 4651 and 4655).[4] Plaintiffs sought a judgment (1) declaring that the nonfederal defendants had violated plaintiffs' constitutional and statutory rights, (2) awarding damages against these defendants, (3) enjoining the Secretary of H.E.W. from giving any further assistance to the Board of Education pending a hearing, and (4) declaring payments by the Secretary illegal until the Board of Education complied with 42 U.S.C. §§ 4651 and 4655. Plaintiffs also sought a temporary restraining order to enjoin the condemnation suit pending in the state court until their civil rights claim could be fully aired in the federal court.

### Denial of Restraining Order

The defendants moved to dismiss plaintiffs' action. The district court on December 19, 1973 granted defendants' motion to dismiss "as it relates to equitable relief". The court held that it would be improper to enjoin the state court condemnation proceedings as plaintiffs had failed to allege facts from which the court could infer that "any of the plaintiffs' federally protected constitutional rights will be infringed in the state court". Relying on Younger v. Harris, 401 U.S. 37, 54, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), the court held that "in the absence of any showing of bad faith or of harassment or of any unusual circumstance that would call for equitable relief, a federal court should not attempt to enjoin a state court proceeding that is pending".

### Proceedings in State Court

On February 20, 1974, a trial was held in the condemnation action in the Circuit Court of Cook County. Expert witnesses called by the respective parties testified to the value of each parcel of land based upon their own personal inspection of the properties and the sales of comparable properties. In all cases, except one (where the appraisers agreed), plaintiffs (defendants in state court) obtained judgments in amounts ranging from $500 to $1,500 more than the Board's highest appraisal. Each plaintiff received an award equal to the highest amount which he claimed to be the fair market value of his property. After the state court had made its awards, counsel for the defendants (plaintiffs here) renewed by motion their "counter-complaint that the defendants be awarded attorneys' fees and appraisal costs and court costs . . . in addition to the amount . . . set forth as just compensation". The motion was denied. No appeal was taken from either the valuation awards or denial of attorney fees.

---

3. Almost all of the named plaintiffs had purchased the property in question during the two years prior to the condemnation action. On eight of the nine parcels, the Federal Housing Authority holds mortgages in almost the full amount of the purchase price.

4. Plaintiffs admit that the original amounts of defendants' appraisals were acceptable to the plaintiffs but argue that these amounts were unavailable as a result of the unlawful practices of the Chicago Board of Education.

*Proceedings in District Court*

Following the state court proceedings, the defendants moved for summary judgment in this action.[5] The district court granted the motions, noting that the only claim for injury that the plaintiffs stated following the state court action related to the payment of attorney's fees. Summarizing the plaintiffs' position, the court stated:

"In effect, plaintiffs contend that it was the unconstitutional acts of the defendants by initially making low offers for their property that forced plaintiffs to resort to hiring an attorney in the state court proceedings in order to obtain a fair price for their property and consequently that now they have lost at least that portion of just compensation due them, in the amount of their attorney's fees."

Rejecting the plaintiffs' argument, the court noted that

"The Illinois Eminent Domain Act . . . does not provide for the awarding of attorney's fees. In addition the Supreme Court of the United States has held that attorney's fees are not embraced within the concept of just compensation for land taken by eminent domain. Dohany v. Rogers, 281 U.S. 362, 50 S.Ct. 299, 74 L.Ed. 904 (1930)".

Based on Dohany v. Rogers, *supra*, the court concluded that the nonfederal defendants had not violated plaintiffs' constitutional or statutory rights. With respect to the Secretary of H.E.W. the court held: "Since no claim remains as against the defendant City, the claims against defendant Caspar W. Weinberger, Secretary of Health, Education, and Welfare, must necessarily fail."

*42 U.S.C. §§ 4651 et seq.*

It is appellants' primary contention that the precondemnation actions of the defendants, i. e., offering plaintiffs prices for their property which were patently unfair in the light of the appraised value of the property, were violative of 42 U.S.C. §§ 4651 and 4655.[6] They argue that the resulting damages were not cured by the state condemnation proceeding, demonstrated in part by the fact that plaintiffs Rhodes, Rogers, Hills, Lawson and Ashley still received from $300.00 to $1,000.00 less than the original appraisals.[7] These losses were attributa-

5. The nonfederal defendants contended that summary judgment was appropriate because the property settlement awarded plaintiffs in the state condemnation proceedings, had rendered moot any contention that plaintiffs' constitutional or statutory rights had been violated. The United States in moving for summary judgment argued that there was "no federal control, federal activity, nor federal law involved in the condemnation activity of the Chicago Board of Education, and therefore, under no circumstances, can there be any federal liability . . . .". The Government further argued that because the state action had rendered the action against the non-federal de-

fendants moot, the case against the Secretary of H.E.W. must also fail.

6. Provisions of the Uniform Relocation Assistance and Real Property Acquisition Policies Act (also known as the "Muskie Act") 42 U.S.C. §§ 4601 et seq. (1970). The purpose of the Act "is to establish a uniform policy for the fair and equitable treatment of persons displaced as a result of Federal and federally assisted programs in order that such persons shall not suffer disproportionate injuries as a result of programs designed for the benefit of the public as a whole". 42 U.S.C. § 4621.

7. The following chart was submitted by the plaintiffs as evidence of the losses suffered by some of the plaintiffs:

| Plaintiff-Owner | Board of Education Appraisal | Letter of Offer | Judgment Order | Attorney's Fees | Appraisal Cost | Net to Homeowner | Gain or Loss over original Appraisal |
|---|---|---|---|---|---|---|---|
| ASHLEY | $20,500 | $16,000 | $20,500 | $ 900.00 | $100.00 | $19,500 | - $1,000.00 |
| COLD | 16,500 | 13,500 | 17,500 | 800.00 | 100.00 | 16,600 | + 100.00 |
| HILL | 17,750 | 13,600 | 18,000 | 880.00 | 100.00 | 17,020 | - 730.00 |
| KAMPE | 15,000 | 11,500 | 16,000 | 900.00 | 100.00 | 15,000 | |
| LAWSON | 16,500 | 13,000 | 17,000 | 800.00 | 100.00 | 15,600 | - 900.00 |
| RHODES | 17,000 | 11,500 | 17,500 | 1,200.00 | 100.00 | 16,200 | - 800.00 |
| ROGERS | 21,000 | 16,000 | 22,000 | 1,200.00 | 100.00 | 20,700 | - 300.00 |
| THOMAS | 18,500 | 15,000 | 20,000 | 1,000.00 | 100.00 | 18,900 | + 400.00 |
| WILSON | 16,000 | 14,000 | 17,000 | 600.00 | 100.00 | 16,300 | + 300.00 |

ble to the attorney's fees and appraisal costs plaintiffs were forced to incur. They contend that since the "condemnor-defendants have subverted the law", Dohany v. Rogers, *supra*, is not controlling, and defendants were liable for the attorney fees plaintiffs were obliged to incur to enforce their constitutional and statutory rights.

42 U.S.C. § 4655 provides:

"Notwithstanding any other law, the head of a Federal agency shall not approve any program or project or any other grant to, or contract or agreement with, a State agency under which Federal financial assistance will be available to pay all or part of the costs of any program or project which will result in the acquisition of real property on and after . . . [January 2, 1971], unless he receives satisfactory assurances from such State agency that—(1) in acquiring real property it will be guided, to the greatest extent practicable under State law, by the land acquisition policies in section 301 [42 U.S.C. § 4651] and the provisions of section 302 [42 U.S.C. § 4652], . . .".

42 U.S.C. § 4651 provides in pertinent part:

" . . . (3) Before the initiation of negotiations for real property, the head of the Federal agency concerned shall establish an amount which he believes to be just compensation therefor and shall make a prompt offer to acquire the property for the full amount so established. *In no event shall such amount be less than the agency's ap-*

*proved appraisal of the fair market value of such property* . . . The head of the Federal agency concerned shall provide the owner of the real property to be acquired with a written statement of, and summary of the basis for, the amount he established as just compensation." (Emphasis added).

Appellants argue that since the Board of Education offered amounts less than the "approved appraisal of the fair market value" of their properties, the nonfederal defendants are liable for any resulting damage.

■■■ We cannot agree and conclude that §§ 4651 and 4655 afford no basis for this action. In the first place, § 4655 is applicable only when Federal financial assistance is used in or directly supports the property acquisition. While substantial sums of Federal money are channeled into the Chicago public school system, there is no evidence that Federal funds are used specifically for the acquisition of property by the Chicago Board of Education.[8]

■ Second, even assuming that land acquisition by the Chicago Board of Education were federally funded, appellants, as condemnees, acquired no rights under 42 U.S.C. §§ 4651 et seq. 42 U.S.C. § 4602 provides:

"(a) The provisions of section 301 of title III of this Act [42 U.S.C. § 4651] create no rights or liabilities and shall not affect the validity of any property acquisitions by purchase or condemnation.

---

**8.** In an affidavit filed in support of the motion for summary judgment, P. Max Gabbert, Acting Director, School Systems, for the Region V Office of Education, Department of Health, Education and Welfare, stated that various grants are given by H.E.W. to the Chicago public schools, but that the use of the grants in every case is restricted for special purposes, none of which includes the acquisition of real property by the Chicago public school system. He also stated that the Chicago public school system receives funds from the Illinois Depart-

ment of Public Instruction, composed in part of state money and federal matching moneys. These funds are administered by the State and are usable for general school purposes. The Federal Government exercises no control over the administration of these funds except by way of post-audit. If the funds are improperly used, the Federal Government "has no authority before the fact to restrain or control such use; rather its only remedy is to proceed against the State for recovery of any money improperly used . . . ."

"(b) Nothing in this Act [42 U.S.C. §§ 4601–4655] shall be construed as creating in any condemnation proceedings brought under the power of eminent domain, any element of value or of damage not in existence immediately prior to . . . [January 2, 1971]." '

The federal courts have, with one exception (Young v. Harder, 361 F.Supp. 64 (D.Kan.1973)), consistently construed 42 U.S.C. § 4602 to preclude federal jurisdiction over actions seeking enforcement of the policies outlined in 42 U.S.C. §§ 4651 et seq. *See, e. g.,* Barnhart v. Brinegar, 362 F.Supp. 464 (W.D.Mo. 1973); Will-Tex Plastics Manuf. Inc. v. The Department of Housing and Urban Development, 346 F.Supp. 654 (E.D.Pa. 1972), aff'd, 478 F.2d 1399. Following an extensive review of the history of the "no rights or liabilities" language of 42 U.S.C. § 4602, the court in Barnhart v. Brinegar, *supra,* 362 F.Supp. at 472–473, stated:

"From this history, we believe one conclusion is irresistible—Congress intended section 102(a) to preclude judicial review of federal and state agency actions under the real property acquisition practices of section 301 of the Act [42 U.S.C. § 4651] . . . . Congress passed section 301 [42 U.S.C. § 4651] as an expression of congressional policy and entrusted the faithful execution of its stated policy solely to the administrators of the Act." [9]

■ We agree and conclude that the district court lacked jurisdiction to entertain an action based on alleged violations of 42 U.S.C. §§ 4655 and 4651.

### Effect of State Court Judgment

In addition to their primary contention that the actions of the defendants violated 42 U.S.C. §§ 4655 and 4651, the appellants contend that "their civil rights were violated on September 8, 1972 and thereafter"; that when judgment was entered in the condemnation action in state court, the "damage was done to most members of the class already" and "would be done in the future"; and that they "have yet to have their day in court as to their damages, both actual and punitive". Appellees argue that the state court provided appellants "with a full and adequate forum for raising their constitutional and nonconstitutional claims" and having taken no appeal from the state court judgments or rulings they are estopped from any federal collateral attack upon the state court proceedings. In resolving this issue it is necessary to set forth in some detail the rather complex course of the proceedings in both state and federal courts.

As noted supra, the condemnation action in state court had been instituted prior to the filing of this action. When this action was filed, appellants sought a temporary restraining order to enjoin the state court action. The motion was denied following a hearing on December 17, 1973. In denying this motion and granting defendants' motion to dismiss "as it relates to equitable relief", the court said in part:

"In addition, since plaintiffs do not challenge the authority of the Board to take their property but merely disagree over the amount of compensation, it appears that an adequate remedy at law exists by way of money damages. Consequently, I hold that since it would be imprudent for this Court to interfere at this time with the pending state court condemnation proceedings, the defendants' motion to dismiss as to the temporary restraining order and

**9.** House Report 91–1656 on the Uniform Relocation Assistance and Real Property Acquisition Policies Act of 1970 (42 U.S.C. §§ 4601 et seq.) reads in part:

"The committee has considered, but does not agree with, proposals which would make the benefits provided by the bill subject to judicial review. The committee agrees with the judgment of the Department of Justice, and others, who believe that this would add an unnecessary burden to the overcrowded courts". U.S. Congressional Code and Admin.News, 91st Cong., 2nd Sess.1970, p. 5854.

permanent injunction should be granted without prejudice to the plaintiffs renewing the same, and it is so decided." [10]

On December 18, appellants sought and obtained an order in state court to "file a petition". On January 11, 1974 they filed a counter-complaint against all of the nonfederal defendants in this action, containing essentially the same allegations as their amended complaint in this action and seeking essentially the same relief, including monetary damages, both actual and punitive, attorney fees and appraisers' fees, and a declaratory judgment that the practices of the defendants (plaintiffs in state court action) were contrary to the Fifth and Fourteenth Amendments to the Constitution of the United States.[11] They did not allege the violation of §§ 4655 and 4651, asserted in this action against both the Secretary of H.E.W. and the nonfederal defendants.

On February 13, 1974 the state court entered an order denying the counter-complaint "as insufficient in law and fact".[12] On February 15, 1974 appellants filed in the district court another motion for a temporary injunction and restraining order, which was denied on the same date.

On February 20, 1974 the condemnation action was tried in state court.

There is no contention that the awards did not constitute just compensation for the properties taken.[13] When the awards were announced by the court, appellants simply renewed their motion for allowance of "attorneys' fees" and appraisal and court costs in addition to the "amounts set forth as just compensation". As noted by the district court in its memorandum and order, no motions were made "at the close of the case in the Circuit Court, nor was an appeal of the judgment order taken".

It may well be that the district court could have granted in full defendants' motion to dismiss the complaint, particularly after the counter-complaint was filed by appellants in state court. In Green Street Association v. Daley, 7 Cir., 373 F.2d 1, 6–7, cert. denied, 387 U.S. 932, 87 S.Ct. 2054, 18 L.Ed.2d 995 (1967), this court affirmed dismissal of an action seeking to enjoin the acquisition by eminent domain of a portion of an urban renewal project, consisting of about 600 dwelling units, 85 per cent of which were occupied by Negroes, the plaintiffs claiming that this portion of the project was merely a sham or ruse to accomplish Negro clearance. The court said in part:

"It must be assumed that the state court will protect the plaintiffs' federal constitutional rights. 'The state courts are as firmly bound by the Con-

10. The court continued:

"This is not to say, however, that this Court will not entertain a similar motion at a later date. Without deciding at this time whether or not plaintiffs have sufficiently invoked federal jurisdiction, it should suffice to say that accepting plaintiffs' allegations as true, there is no authority that should permit such inference. (citing cases). Consequently, it will be sufficient to simply abstain from interfering with the pending state court proceedings at this time. Questions of jurisdiction, sufficient claim and proper class can, if necessary, be decided at a later date. This Court should at least by this decision express, though it does not so find, confidence that the Circuit Court of Cook County will in every respect conscientiously seek to protect plaintiffs' constitutional rights.

"On the other hand, however, absent such a finding and such a procedure in the state

court, plaintiffs can be assured that this Court will not be hesitant to provide them with an adequate remedy."

11. The City of Chicago in Trust for the Use of Schools filed an answer and affirmative defenses to the counter-complaint, seeking dismissal of appellants' claim.

12. While the court in its order did not discuss appellants' contention that their constitutional rights had been violated, the counter-complaint was denied "after hearing the argument of counsel" when the case came on for trial.

13. Appellants argue that after the hearing on December 17, 1973, "Defendants raced to the Chicago Civic Center to try and undo the wrong already suffered by the Plaintiffs by conducting ultra fair condemnation proceedings".

stitution of the United States as is this [federal] Court and [the proper] forum for the enforcement of any constitutional rights that may have been violated is in the . . . state courts with the right of ultimate determination by the Supreme Court of the United States.' " [14]

■ In its order granting summary judgment the district court explained that the essence of its ruling in denying the motions for restraining orders was "that despite plaintiffs' allegations that certain Federal constitutional rights were being violated, the Circuit Court of Cook County provided an already available and adequate forum in which those rights could be protected". The district court concluded that there was no evidence that the state court had not fully protected appellants' constitutional rights, and that "Despite the many legal theories propounded by the parties, the controversy" came "down to the single question of whether or not this court can award plaintiffs the cost of attorney's fees incurred in the state court litigation". It is clear that the Illinois Eminent Domain Act, Ill. Revised Statutes, Ch. 47 does not provide for attorney's fees in condemnation cases. The district court correctly concluded, as had the state court, that attorney's fees were not allowable under Dohany v. Rogers, *supra.*

■ Except for their reliance on alleged violations of 42 U.S.C. §§ 4655 and 4651, appellants in essence seek to relitigate issues they raised in their counter-complaint in state court. As this court stated in Green Street Association v. Daley, *supra,* the state court was a proper forum for the enforcement of any constitutional rights that may have been violated. Appellants could have appealed the adverse ruling in state court, but did not do so. We conclude that summary judgment was properly granted against all of the defendants.

Affirmed.

**14.** *See also* Blankner v. City of Chicago, 504 F.2d 1037 (7 Cir. 1974).