277 F.2d 814
 SELECT LAKE CITY THEATRE OPERATING Co., Appellant,
v.
CENTRAL NATIONAL BANK IN CHICAGO, as Trustee under Trust
Agreement Dated December 14, 1951 and Known as
Trust No. 2626, Appellee.
 No. 12861.
 United States Court of Appeals Seventh Circuit.
 May 9, 1960, Rehearing Denied June 7, 1960.
 
 Sidney R. Zatz, Richard Z. Rosenfeld, Chicago, Ill., for appellant. Arvey, Hodes & Mantynband, Chicago, Ill., of counsel.
 Sidney Z. Karasik, Harold T. Berc, Chicago, Ill., for appellee.
 Before DUFFY and CASTLE, Circuit Judges, and MERCER, District Judge.
 DUFFY, Circuit Judge.
 
 
 1
 On July 14, 1947, a lease was executed between G.N. Corporation, as Lessor, and Select Lake City Theatre Operating Company (Select) as Lessee, for a twnety-year term commencing September 1, 1947. G.N. Corporation was then the owner in fee simple of the real estate described in the lease, but the property was conveyed in 1951 to the bank under a trust agreement subject, however, to Select's rights under the lease described.
 
 
 2
 Located in and as part of the building on said real estate was the Great Northern Theatre. On March 31, 1959, the United States of America filed its condemnation petition and declaration of taking of the property in question, and deposited a sum of money as compensation pending the final decision as to the proper amount of the award. Select filed a petition that it be paid $75,000.00 for its interest in the leasehold. The Bank, as trustee, filed a motion for summary judgment. On October 8, 1959, the Districa Court granted the motion for summary judgment holding Select was not entitled to any part of the condemnation award.
 
 
 3
 The lease provided Select was to pay a fixed rental for the twenty-year term and, in addition thereto, a percentage rental computed under Paragraph 1(a)(2) which read as follows:
 
 
 4
 '(2) Percentage Rental: A sum equal to thirty three and one-third percent (33 1/3%) of the net earnings (in excess of the first Seventy five thousand Dollars ($75,000) of such net earnings which shall be retained by the Lessee to reimburse it for its advance as hereinafter provided) from operations of the demised premises as hereinafter defined during the period beginning September 1st, 1947 and ending August 31st, 1948 and during each lease year thereafter ending August 31st during the demised term. The percentage rental for such year shall be paid by Lessee to Lessor within sixty (60) days after the end of each lease year. No such payments of percentage rental, however, shall be made for any period until the Lessee shall have been fully reimbursed for its said advanced of Seventy five thousand Dollars ($75,000).'
 
 
 5
 The Lessor agreed at its own expense to make certain alterations and improvements necessary to make the demised premises usable as a theatre. The Lessee agreed at its own expense to furnish and install certain fixtures and equipment including chairs, seats, carpeting, draperies, vacuum cleaner machine, equipment for the box office, and to paint and decorate the demised premises in front of the curtain line. If the expense of such installation should be less than $75,000, the Lessee was required to pay Lessor the difference. The expense did, in fact, amount to or exceed $75,000.
 
 Paragraph 2(c) of the lease provided:
 
 6
 '(c) The aforesaid sum of Seventy five thousand Dollars ($75,000.00) to be expended by the Lessee shall be recouped by it out of the first net earnings from the operation of the demised premises and no percentage rental shall become due or payable to the Lessor as set forth in Paragraph 1, subdivision (a)(2) until the Lessee shall have fully recouped the aforesaid sum. Title to all of the furnishings, fixtures and personal property hereinbefore referred to to be furnished by the Lessee shall remain in and continue to vest in the Lessee until such time as Lessor has obtained and procured all of the permits necessary to permit the use of the demised premises as a theatre as required in paragraph 2(a) hereof. * * *.'
 
 
 7
 The lease contained a condemnation clause in Paragraph 20, as follows:
 
 
 8
 '20. The parties hereby agree that in the event that the whole of the demised premises shall be taken by the Government of the United States, the State of Illinois, the City of Chicago, or any government or power whatsoever, or by any corporation under the right of Eminent Domain, or should the whole of said demised premises be condemned by any court, city, county, state, or governmental authority, that then and in that event this lease shall cease and come to an end. The taking of such portion of the demised premises as shall diminish or materially interfere with the operation of a theatre upon the demised premises as contemplated by this lease shall be considered for the purpose of this provision of the Indenture of Lease as a taking of the whole of the demised premises.'
 
 
 9
 Select cites cases such as Schreiber v. Chicago & Evanston Railroad Company, 115 Ill. 340, 346, 3 N.E. 427, and Baker v. McClurg, 198 Ill. 28, 36, 64 N.E. 701, 59 L.R.A. 131, to the effect that installations made by a tenant (similar to those made by Select) are generally deemed personal property and may be removed by the tenant at the end of the term, and that if such peoperty is taken in a condemnation proceeding, together with fixtures attached by the tenant to the real estate, such property must be considered in determining the value of the real estate taken by condemnation. Select says that under authority of such cases, the part of the award attributable to the value of such installations must be apportioned to it. We do not regard such cases as controlling, for, in the case at bar, the lease specifically provided that the title to the property installed in the theatre by Select was to be in the Lessor.
 
 
 10
 Select insists, however, that as the lease provided that it be reimbursed for the $75,000 advance made by it, and as such reimbursement had not been made, it is entitled to the sum of $75,000 from the condemnation award.
 
 
 11
 Appellee asserts that Select has been reimbursed for the $75,000 advance, and introduced in evidence the operating statement furnished to it by Select for the year 1953. This account showed that from the profits of operating the theatre for the year ending August 31, 1948, Select had 'recouped' $47,849.41, and for the year ending August 31, 1949, had 'recouped' $24,792.28, leaving a balance to be 'recouped' of $3,137.09. The account then showed that from the profits of the year 1953, there had been 'recouped' $3,137.09 and the account was balanced.
 
 
 12
 Accompanying the account was a letter sent from the New York office of Select and addressed to Great Northern Properties. The first paragraph thereof stated: 'We are enclosing statement of operations for the Great Northern Theatre, Chicago, for the year ended August 29, 1953, together with our check to your order in amount $504.57 covering your share of the profits.' The letter was signed 'Select Lake Theatre Operating Co. by John F. Waters, Treasurer.'
 
 
 13
 Select realizes that the interpretation as to the amounts recouped under the lease as shown by the statement is contrary to the interpretation it now urges on this appeal. It argues that the Treasurer was mistaken in his interpretation of the lease, and as a further defense, points to a printed sentence appearing at the bottom of the letterhead as follows: 'No agreement or order will be binding on this corporation unless in writing and signed by an executive officer, or its General Manager.' We think this defense is wholly without merit. We need not decide nor discuss whether the treasurer of a corporation is an 'executive officer' as to fiscal matters under his control or supervision. It is clear that the operating statement submitted by Select was not an agreement or an order.
 
 
 14
 Lessor accepted and relied upon Select's operating statements and after 1953 was entirely justified in believing that Select had recouped the cost of the installations. There was no occasion for it to challenge Select's accounting, or exercise the right of audit granted by the lease. Select's accounting statement was, at least, an admission against interest.
 
 
 15
 Recoupment was solely contingent upon net earnings. The lease afforded a chance to Select to recoup for installations made from net earnings. There was no reciprocal obligation by Lessor to reimburse Select. In other words, there was nothing in the lease that guaranteed to Select a recoupment of the sum of $75,000.
 
 
 16
 Select admits its claim is not based on the value of the unexpired term of the lease. Indeed, in view of the condemnation clause, it would have no standing to do so. Nevertheless Select, asserts it has an interest 'on the strength of being granted the right of using the premises and installations for a term of 20 years, and of obtaining complete reimbursement for such expenditures out of the earnings of the theatre, * * *.'
 
 
 17
 Conceding arguendo Select has not been reimbursed, it does not follow that it is entitled to any share of the award. The term of the lease was for 20 years or such earlier date as a condemnation might set. The lease specifically provided it would cease and come to an end in the event that the demised premises would be taken by the Government of the United States by condemnation. Neither federal law (United States v. Petty Motor Co., 327 U.S. 372, 375, 376, 66 S.Ct. 596, 90 L.Ed. 729) or Illinois State law (United States v. Advertising Checking Bureau, Inc., 7 Cir., 204 F.2d 770) gives Select a compensable interest after condemnation by the United States government has been commenced.
 
 
 18
 We hold that as a matter of law, Select has no compensable interest in the demised premises, and the District Court was correct in granting Lessor's motion for a summary judgment.
 
 
 19
 Affirmed.