**NATIONAL RAILROAD PASSENGER CORP., Plaintiff–Appellee,**

**v.**

**FABER ENTERPRISES, INC., Defendant–Appellant.**

**No. 90–2320.**

United States Court of Appeals, Seventh Circuit.

Argued Jan. 14, 1991.

Decided May 3, 1991.

Richard J. Gray, Keith F. Bode, Michael B. Brohman, Barry Sullivan, Elizabeth R. Bacon–Ehlers, Jenner & Block, Chicago, Ill., for plaintiff-appellee.

Joseph A. Spitalli, Raymond F. Simon, Simon & Spitalli, Chicago, Ill., for defendant-appellant.

Before CUMMINGS, POSNER and KANNE, Circuit Judges.

CUMMINGS, *Circuit Judge.*

Faber Enterprises subleased property in Chicago's Union Station, operating restaurants, cocktail lounges, arcades and book stores there until April 19, 1989. On that day, the National Railroad Passenger Corp., familiarly known as Amtrak, took possession and control of Faber's leasehold interest by condemnation under power of eminent domain. Section 305(d) of the Rail Passenger Act, 45 U.S.C. § 545(d), authorizes such takings. Amtrak carried out the condemnation as the first step in its plan to renovate Union Station. Faber surren-

dered its leasehold and sought no compensation for the value of the unexpired term of the lease. At the time of the taking, there were seven years remaining on a twenty-year lease. Faber did seek just compensation under the Fifth and Fourteenth Amendments for fixtures and personal property on the subleased premises in a counterclaim filed in response to Amtrak's Declaration of Taking. Faber estimates that it added value to the real estate in the amount of $900,000. Fixtures account for $158,000 of that total. Faber also sought a declaration that Amtrak's condemnation did not extinguish a right of first refusal granted to Faber in its sublease. The district court ruled against Faber on both counts after Amtrak moved for summary judgment, and Faber appeals.

## ANALYSIS

■ Somewhat contrary to the expectations of the parties, contract interpretation plays a more prominent role in the resolution of this case than the law of eminent domain. The applicable law of eminent domain for a leaseholder is clear. Like an owner, he or she is entitled to "the value of the interest taken." *United States v. General Motors Corp.*, 323 U.S. 373, 379, 65 S.Ct. 357, 360, 89 L.Ed. 311 (1945). Determining which interests have been taken necessitates an inquiry into the relative rights of the lessor and lessee at the time of the taking, as defined in the lease.

We look to the lease between Faber, the sublessee, and the Chicago Union Station Company ("CUSCO"), the sublessor and a wholly owned subsidiary of Amtrak, to discern whether Faber possessed compensable interests in fixtures and personal property or in a right of first refusal at the time of Amtrak's taking. Facts in the following analysis will be construed in favor of the appellant, as is required on review of a grant of summary judgment.

A. The Fixtures and Personal Property.

Faber seeks compensation for personal property used on its premises during the term of the leasehold. This property includes cash registers, popcorn machines, coffee makers, chairs, typewriters and the like (R. Item 136, Ex. B). In addition, Faber wants payment for immovable trade fixtures installed on the premises, such as counters, wall and ceiling panelling, booths and light fixtures (R. Item 136, Ex. C).

In support of its claim that it had compensable rights in the personal property and immovable fixtures on its premises at the time of the condemnation, Faber relies on Section 11 of the sublease with CUSCO. That section, which contemplated the possibility of condemnation, provides:

ELEVENTH: If the whole or any part of the demised premises shall be acquired or condemned by Eminent Domain for any public or quasi public use or purpose, then and in that event, the term of this lease shall cease and terminate from the date of title vesting in such proceeding and Tenant shall have no claim against Landlord for the value of any unexpired term of said lease. The provisions of this Article ELEVENTH shall not prohibit Tenant from filing and proving *any claim it may have with respect to its fixtures and personal property* taken in such acquisition or condemnation. (R. Item 72, Ex. A at 29–30) (emphasis supplied).

Faber argues that this condemnation clause, while clearly extinguishing any rights that Faber may have had in the value of the unexpired term, explicitly reserved its right to be compensated for fixtures and personal property.

Amtrak makes distinct responses with respect to the fixtures and personal property. Amtrak believes Faber cannot be compensated for the immovable trade fixtures because Faber did not own them when the taking occurred. Section 3 of the sublease provides that all improvements to the property become the property of the landlord. That section states:

THIRD: * * * *All* alterations, decorations, installations, additions or *improvements* upon the demised premises, made by either party, (including panelling, partitions, railings, mezzanine floors, galleries and the like) *except movable trade fixtures, shall become the property of*

*the landlord.* (R. Item 72, Ex. A at 16) (emphasis supplied).

As to the personal property, Amtrak concedes that Faber did own that property at condemnation. However, Amtrak argues that Faber had an obligation to remove personal property when vacating the premises. Section 21 of the sublease states:

> TWENTY–FIRST: Upon the expiration or other termination of the term of this lease, Tenant shall quit and surrender to Landlord the demised premises, broom clean, in good order and condition, ordinary wear excepted, and Tenant shall remove all of its property. (R. Item 72, Ex. A at 43).

Faber refused to remove its personal property after condemnation, claiming that the property was valueless apart from the premises. Amtrak contends that Faber's failure to remove its personal property after condemnation constituted an abandonment of its ownership rights and any right to compensation.

As an initial matter, the quoted provisions of the contract are not necessarily contradictory and thus should be harmonized. See *In re Halas,* 104 Ill.2d 83, 93, 83 Ill.Dec. 540, 544, 470 N.E.2d 960, 964 (1984). Faber argues that Section 11, because it specifically addresses the subject of condemnation, must govern the less specific (and less favorable) sections 3 and 21. Section 11 of the sublease need not be read to supersede the other relevant sections, however. Section 11 provides only that Faber may pursue any claims "it *may have* with respect to its fixtures and personal property" (emphasis supplied). Rather than conferring on Faber any substantive right to fixtures and personal property, it merely preserves any preexisting claims that Faber may have had. Sections 3 and 21 help articulate the substantive rights Faber possessed at the time of the taking and can be read together with Section 11.

■ The terms of the lease, read together, support Amtrak. Section 3 clearly states that fixtures other than movable fixtures "shall become the property of the landlord," in this case CUSCO. The immovable fixtures for which Faber seeks compensation thus did not belong to Faber at the time of the taking. They belonged to CUSCO, a party Amtrak did compensate. A tenant ordinarily has a right to compensation for any increase in the market value of condemned property attributable to a permanent fixture or improvement. See 7A Nichols, *Law of Eminent Domain,* § 11.07 (Rev. 3d ed. 1990); *Almota Farmers Elevator & Warehouse Co. v. United States,* 409 U.S. 470, 476–477, 93 S.Ct. 791, 795–796, 35 L.Ed.2d 1 (holding that tenant may, in addition, be entitled to market value of improvement to leasehold over term of renewal, if renewal is likely). A lease provision granting ownership rights in fixtures to the landlord, however, prevents the tenant from recovering the value of any improvements. See *Select Lake City Theatre Operating Co. v. Central National Bank,* 277 F.2d 814, 817 (7th Cir,1960) (tenant not entitled to just compensation for fixtures when lease "specifically provided that the title to the property installed * * * was to be in the Lessor").

Faber claims that the spectre of forfeiture should persuade this Court to grant compensation for the fixtures. It argues it is unreasonable to believe that Faber would have agreed to a provision vesting title to the fixtures in CUSCO unless the parties understood that Faber was to have the entire term of the lease to recoup its outlay for the various installations. Faber believes that if it does not receive any compensation for the fixtures, it will have been forced to forfeit the amount that it was expecting to receive from the continued use of the fixtures on the premises for the seven years remaining on the sublease at condemnation.

Again, the terms of the contract obstruct Faber's argument. It is certainly reasonable to believe that Faber would have insisted on a right to recoup its investment in fixtures over the full twenty-year term of the sublease as a *quid pro quo* for its surrender of any ownership right to the fixtures. But Faber did not make this arrangement. Section 3 arguably can be read to provide that the transfer of rights in the fixtures was to be delayed at least

until termination of the sublease.[1] Even if we accept this as true, the contract defines condemnation by eminent domain as an event which "terminates" the lease. Section 11 states unequivocally that in the event of a taking, "the term of this lease shall cease and terminate." As was the case in *Select City*, the tenant has deprived itself of any claim to amounts which might have been recouped over the remainder of the term by agreeing to terminate the lease in the event of a taking. *Id.* at 817–818. See also *United States v. 1.357 Acres of Land*, 308 F.2d 200, 203 (7th Cir.1962) (lease specifying that fixtures become landlord's upon termination from any cause bars tenant from recovery of "compensation for loss of the leasehold which alone gave substantial value to the fixtures").

■ The personal property, unlike the immovable trade fixtures, did remain the property of Faber after termination of the sublease by condemnation. As a matter of common law, a taking of real estate or a leasehold does not affect the ownership of personal property on, but not affixed to, the premises. 2 Nichols, *Law of Eminent Domain*, § 5.58 (Rev. 3d ed. 1989). Amtrak has repeatedly disavowed any desire to acquire the personal property owned by Faber.

■ Still, Faber cannot be compensated for its personal property because it was never taken. Faber simply abandoned it. Sublease Section 21 obligated Faber to remove any of its property "upon the expiration or other termination of this lease." Faber admits that it never removed its personal property, but argues that it was entitled to abandon its property because it cannot be used elsewhere. Faber believes that Amtrak must compensate it for rendering its items of personal property valueless.

■ Faber's reasoning is flawed because it is not the condemnation that rendered its personal property worthless. After condemnation, Faber had the same right it would have possessed had condemnation never occurred: the right a tenant ordinarily has to remove its personal property from the premises. If removal from the premises rendered the property valueless, presumably it would have done so whether the removal occurred because of condemnation or expiration of the sublease. In *1.357 Acres*, the lease provided that the tenant could remove trade fixtures from the premises upon termination. When the government condemned the property, the tenant refused to remove the fixtures, saying that "apart from the premises for which they were designed * * *, the fixtures possessed only negligible salvage value." 308 F.2d at 203. This Court refused to grant the tenant compensation for these fixtures which could have been removed.

> [T]he Lessee was in the same position when the property was taken as it would have been in at the end of the term of the lease. Its right under the lease at the end of the term was to remove the trade fixtures. This right would be of no more value at the end of the term than it proved to be upon the taking under condemnation.

*Id.* As was the case in *1.357 Acres*, it is the act of having to remove property designed specifically for use on the premises which renders the property valueless. Because removal would be necessary in either the event of condemnation or expiration, the tenant has suffered no loss by virtue of the taking.[2]

■■ Simply put, there is no entitlement to just compensation for depreciation in the value of personal property used on condemned premises, but not affixed to the premises so as to increase the value of the

---

1. Faber argues that the "shall become the property of the Landlord" language indicates that the parties believed the transfer would occur only at termination and not at any earlier time (Pl. Br. 12).

2. Nor can Faber argue that it is entitled to compensation because it was forced to remove its property earlier than it otherwise would

have. This is the same argument made with respect to the immovable trade fixtures and it fails for the same reason. Faber agreed to a termination-on-condemnation clause and is precluded from receiving any compensation for expected recoupment over the unexpired term of the lease.

property taken. 2 Nichols, *Law of Eminent Domain*, § 5.47 (Rev. 3d ed. 1989) ("A tenant may not * * * recover for the property not attached to the realty"). Faber argues broadly that if a taking of a leasehold causes any impairment in the use of any kind of property, the tenant is entitled to compensation. It cites *United States v. General Motors Corp.*, 323 U.S. at 373, 65 S.Ct. at 357 (tenant can be compensated for damage to fixtures and permanent equipment resulting from temporary taking); *First English Evangelical Lutheran Church v. County of Los Angeles,* 482 U.S. 304, 107 S.Ct. 2378, 96 L.Ed.2d 250 (1987) (compensation appropriate for taking of real property by land-use regulation); *Almota Farmers Elevator & Warehouse Co. v. United States,* 409 U.S. at 470, 93 S.Ct. at 791 (compensation proper for substantial and permanent improvements); *San Diego Gas & Electric Co. v. San Diego,* 450 U.S. 621, 101 S.Ct. 1287, 67 L.Ed.2d 551 (1981) (involving zoning regulation which deprived owner of 412–acre lot of beneficial use); *United States v. 40.00 Acres of Land,* 427 F.Supp. 434 (W.D.Mo. 1976) (value of sign structure affixed to condemned property can be recovered under Uniform Relocation Assistance and Real Property Acquisition Policies Act of 1970). Some of the cited cases involve impairment of the value of affixed, permanent improvements which are a part of the property taken. The rest involve impairment of the use of the realty itself because of government regulation. All are inapposite in this situation, where a consequence of a taking of real property is the impairment of personal property not attached to the premises.[3]

■ The relevant common law does not entitle Faber to just compensation for its immovable fixtures or personal property. Faber hints that it might have a statutory right to compensation under the Uniform Relocation Assistance and Real Property

Acquisition Policies Act, 42 U.S.C. §§ 4601 *et seq.* [hereinafter "URA"]. Faber invokes in particular 42 U.S.C. § 4652, which directs that tenants meeting certain preconditions can be compensated for improvements made to property taken by federal agencies. We suspect that recovery under the URA would be barred for the same reasons discussed herein, namely that Faber has bargained away whatever rights it possessed to its fixtures and that it suffered no "taking" with respect to its personal property. However, the simpler reason that the URA cannot furnish a basis for reversal here is that we have no jurisdiction over a claim brought pursuant to the Act. *Rhodes v. Chicago,* 516 F.2d 1373, 1378 (7th Cir.1975) (federal courts lack jurisdiction over actions seeking enforcement of policies outlined in 42 U.S.C. §§ 4651 *et seq.*); *Ackerly Communications of Florida, Inc. v. Henderson,* 881 F.2d 990, 993 (11th Cir.1989) (Administrative Procedure Act is exclusive remedy for alleged violations of the URA). But see *United States v. 40.00 Acres of Land,* 427 F.Supp. at 434 (court overseeing condemnation action can adjudicate URA claim brought by condemnee). The district court correctly found that Faber cannot recover the value added to the condemned premises by the immovable trade fixtures and personal property.

**B. The Right of First Refusal.**

The sublease between Faber and CUSCO provided that the landlord would not "lease any portion of the mezzanine or plaza level floor of the building for the principal use of food and/or beverage service for on-premises consumption without first offering such space to Tenant." (R. Item 72, Ex. A at 69). Faber argues that the right of first refusal survived the taking, and that Amtrak is thus obligated to invite Faber to lease space in Union Station after renovation is completed. In addition, Faber con-

---

**3.** The district court properly emphasized that the notion of compensating the condemnee for the value of the interest taken is not unlimited. Compensation is appropriate for property actually taken but does not include reimbursement for consequential losses. See *United States v.*

*Petty Motor Co.,* 327 U.S. 372, 377–378, 66 S.Ct. 596, 599, 90 L.Ed. 729 (1946) ("evidence of loss of profits, damage to good will, the expense of relocation and other such consequential losses are refused in federal condemnation proceedings").

tends that any attempt to "take" the right of first refusal is forbidden because such a taking would serve no public purpose.

 Amtrak's Declaration of Taking extinguished Faber's right of first refusal. All of the tenant's contractual rights terminate as a matter of law when a taking occurs. Restatement (Second) of Property § 8.1(1) (1977) ("If there is a taking by eminent domain of all of the lease term, the lease is terminated"). Faber explicitly agreed to this eventuality by signing a contract in which it was stated that the lease would "cease and terminate" upon condemnation.

Faber's argument that there can be no taking of the right of first refusal likewise is misguided. There was no taking of the contractual right. Instead Amtrak took the underlying property. Faber does not dispute that there was a public purpose for the taking of the property. When the property was taken, the lease operated so as to terminate all contractual obligations between the parties, including the right of first refusal. Faber cannot complain about the scope of the taking; it is the scope of Section 11 of the contract which precludes relief.

## CONCLUSION

For the foregoing reasons, the judgment of the district court is affirmed.