LILLIAN GRIFFITHS, Plaintiff-Appellant, v. THE OFFICE OF THE STATE FIRE MARSHAL *et al.*, Defendants-Appellees.

Second District   No. 2—97—1146

Opinion filed December 28, 1998.

Eugene G. Doherty, of Holmstrom & Kennedy, P.C., of Rockford, for appellant.

James E. Ryan, Attorney General, of Chicago (Barbara A. Preiner, Solicitor General, and Edmund C. Baird, Assistant Attorney General, of counsel), for appellees.

JUSTICE COLWELL delivered the opinion of the court:

On March 23, 1994, Jim Drager, of the defendant office of the State Fire Marshal (Fire Marshal), issued an administrative order to Clifford Trickie, requiring him to register and remove out-of-use underground storage tanks (USTs) at Cliff's Restaurant. Trickie objected that he was not the owner of the tanks, and Drager researched the prior ownership of the property and concluded that plaintiff, Lillian Griffiths, was the party responsible for registering and removing the tanks. Plaintiff was issued an order requiring her to do so, and she appealed to the Fire Marshal. The hearing officer concluded that Griffiths was the owner of the tanks because they were fixtures that became part of the real estate. Griffiths filed a complaint for administrative review, and the circuit court upheld the Fire Marshal's decision. Griffiths now appeals, arguing that (1) the USTs are trade fixtures and thus she is not the owner of the USTs for purposes of the registration and removal requirements, and, alternatively, (2) with respect to the removal requirement, it is contrary to common law to impose upon a person without possession the duty to correct a condition on the premises, and the regulations do not specifically provide for such a result. We reverse and remand.

The parties are familiar with the relevant facts and they will not be repeated in detail here. The essential facts are that on September 11, 1958, plaintiff leased vacant property to Owen Brown under a 20-year lease. Brown opened a service station on the property and installed the USTs. At various times over the next several years, Coil Oil Company, Smith Oil Company, and Sun Oil company operated at the site. Brown testified that he assigned his rights under the 20-year lease to Coil Oil and he believed that Coil Oil later assigned its rights to Smith Oil. However, these assignments were never recorded. There

was a memorandum recorded in 1977 that showed that Sun Oil was relinquishing its rights under the 1958 Brown lease. Additionally, the Fire Marshal produced evidence showing that deliveries from Torch Oil Company were made to Stateline Truck Stop at the premises in 1978. There was no evidence that the tanks were used after 1978. Plaintiff entered into an agreement for deed with Trickie in 1983, but the property was not officially deeded to him until June 1, 1987.

■ The hearing officer concluded that plaintiff owned the tanks at the relevant time because they were fixtures of the property and thus part of the real estate. The hearing officer relied on section 4(e) of the Gasoline Storage Act (430 ILCS 15/4(e) (West 1996)), which adopts the federal definition of an "owner" of a UST. The definition applicable to this case is as follows:

"[I]n the case of any underground storage tank in use before November 8, 1984, but no longer in use on November 8, 1984, any person who owned such tank *immediately before the discontinuation of its use.*" (Emphasis added.) 42 U.S.C.A. § 6991(3)(B) (West 1995).

According to the hearing officer, because the USTs were fixtures of the property, the owner of the real estate at the relevant time, plaintiff, was the owner of the tanks.

Plaintiff's principal contention on appeal is that, if the USTs are fixtures, they are trade fixtures, which remain the personal property of the tenant until and unless they are abandoned. Thus, plaintiff argues, under the applicable definition she could not be the owner of the tanks because she would not have gained any ownership until the tanks were abandoned, while the definition looks to who owned them immediately before the discontinuation of their use.

■ Defendant argues that plaintiff is raising the trade fixtures argument for the first time on appeal and has thus waived it. We reject this contention for two reasons. First, the hearing officer based her decision on the law of fixtures, and thus it was her responsibility to consider fully the applicable law. Second, the record shows that at both the administrative hearing and in the circuit court plaintiff argued that the USTs remained the personal property of the tenant. Whether or not she used the term "trade fixtures," this is a trade fixtures argument. Thus, we do not believe plaintiff waived her right to rely on this argument.

■ ■ In *Empire Building Corp. v. Orput & Associates, Inc.*, 32 Ill. App. 3d 839, 841 (1975), we explained the law of trade fixtures as follows:

"In disputes between the landlord and tenant there is a presumption that the tenant, by annexing fixtures, did so for his own bene-

fit and not to enrich the freehold, and the law accordingly construes the tenant's right to remove his annexations liberally, at least where removal may be effected without material injury to the freehold. [Citations.]

Articles annexed to the realty by a tenant for the purpose of carrying on a trade are ordinarily removable by him during his term [citations], unless the removal would substantially injure the freehold."

We also noted that "an article may generally be regarded as a trade fixture if it is annexed for the purpose of aiding in the conduct by the tenant of a calling exercised on the leased premises for the purposes of pecuniary profit." *Empire Building*, 32 Ill. App. 3d at 841. We have also applied a three-part test that looks at (1) the means by which the item has been annexed to the real estate; (2) whether it is adapted to and necessary for the purpose to which the premises is devoted; and (3) the intent of the parties. *B. Kreisman & Co. v. First Arlington National Bank*, 91 Ill. App. 3d 847, 852 (1980). The most important of these factors is the parties' intent. *B. Kreisman*, 91 Ill. App. 3d at 852.

■ The clear weight of authority is that USTs are trade fixtures. See, *e.g., Sgro v. Getty Petroleum Corp.*, 854 F. Supp. 1164, 1179-80 (D.N.J. 1994) (collecting cases), *aff'd*, 96 F.3d 1434 (3d Cir. 1996); *Shell Oil Co. v. Capparelli*, 648 F. Supp. 1052, 1055 (S.D.N.Y. 1986); *Lee-Moore Oil Co. v. Cleary*, 295 N.C. 417, 424-27, 245 S.E.2d 720, 725-26 (1978); *Ilderton Oil Co. v. Riggs*, 13 N.C. App. 547, 549-50, 186 S.E.2d 691, 693 (1972); *First National Bank v. Reese*, 356 Pa. 175, 178-79, 51 A.2d 806, 808 (1947); *Bence v. Spinato*, 196 Wis. 2d 398, 409, 538 N.W.2d 614, 617 (1995) ("It is generally recognized, and undisputed by both parties, that underground fuel tanks installed by a lessee constitute 'trade fixtures' "); *Standard Oil Co. v. La Crosse Super Auto Service, Inc.*, 217 Wis. 237, 244, 258 N.W. 791, 794 (1935). Although the Illinois Supreme Court has not ruled on the issue, it has held that 1,388 feet of well casing embedded and cemented into the ground for oil and gas extraction was a trade fixture. *Jones v. Jos. Greenspon's Son Pipe Corp.*, 381 Ill. 615, 619-22 (1943). The unifying feature of all of these cases is that the courts look to the parties' intent to determine whether the underground equipment is a trade fixture.

Here, there was no evidence of the parties' intent introduced at the administrative hearing. The hearing officer ruled that the items were fixtures and thus became part of the real estate, making plaintiff the owner. However, because the items were installed by the tenant for the purpose of carrying on a trade, the rebuttable presumption is that the USTs are trade fixtures. The Fire Marshal concedes this but correctly argues that this presumption could be overcome by contrary

evidence of the parties' intent. The issue of fixtures did not come up at the hearing but rather in the parties' posthearing briefs, and the hearing officer relied on this argument.

One of the powers of the circuit court on administrative review is to remand the cause to the agency for the purpose of taking additional evidence when it appears that such action is just. 735 ILCS 5/3—111(a)(7) (West 1996). We believe that is what the court should have done here. The hearing officer ruled on the issue of fixtures without having any evidence of the parties' intent, which is the most important factor in determining the ownership of the items. The hearing officer stated that the only issue was whether plaintiff owned the tanks. That is not true because another issue is *when* plaintiff owned the USTs. If the USTs are determined to be trade fixtures, then plaintiff is correct that she could not be the owner for purposes of the registration and removal requirements because any ownership interest she had would have been after the tanks were abandoned.

Thus, we will reverse the judgment of the circuit court, vacate the Fire Marshal's decision, and remand the cause to the Fire Marshal for the taking of additional evidence on the parties' intent. Both parties should be allowed to introduce any evidence relevant to this issue. The most important piece of evidence would be what the Brown lease provided, if anything, with respect to trade fixtures. It appears, unless the parties have evidence to the contrary, that all of the parties who operated a service station on the premises were doing so under assignments of the original Brown lease.

The judgment of the circuit court of Winnebago County is reversed; the decision of the Fire Marshal is vacated; and the cause is remanded to the Fire Marshal for the taking of additional evidence.

Reversed and remanded.

McLAREN and RAPP, JJ., concur.