FIRST DISTRICT
SIXTH DIVISION
DECEMBER 17, 2010

No. 1-10-1002

|  |  |  |
|---|---|---|
| THE VILLAGE OF PALATINE, a Municipal Corporation, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | Appeal from the |
| PALATINE ASSOCIATES, LLC, SEARS ROEBUCK | ) | Circuit Court of |
| AND COMPANY, and PROJECT BAY EXCHANGE, | ) | Cook County. |
| | ) | |
| Defendants. | ) | No. 06 L 51257 |
| | ) | |
| (One Hour Cleaners, | ) | Honorable |
| Defendant-Appellant, | ) | Alexander P. White, |
| | ) | Judge Presiding. |
| v. | ) | |
| | ) | |
| Palatine Associates, LLC, | ) | |
| Defendant-Appellee.) | ) | |
| | ) | |

JUSTICE ROBERT E. GORDON delivered the judgment of the court, with opinion.
Presiding Justice Garcia and Justice McBride concurred in the judgment and opinion.

**OPINION**

This appeal arises from a condemnation proceeding brought by the Village of Palatine (the

Village), seeking to acquire property in Palatine, Illinois, that was being used for a shopping

center. The Village paid over $6 million to defendant Palatine Associates, LLC (Palatine

Associates), the owner of the property, in just compensation, from which any claims of the tenants

was to be apportioned. Appellant One Hour Cleaners filed a petition seeking compensation for its

trade fixtures, which was denied by the trial court on Palatine Associates' motion to dismiss the

No. 1-10-1002

petition[1], based on a finding that One Hour did not have an interest in the condemnation award. One Hour Cleaners appeals, arguing that it had an interest in the condemnation award. We affirm.

BACKGROUND

Palatine Associates was the owner of the property at issue in this case (subject property), which contains a shopping center with a number of tenants, including Sears and One Hour Cleaners. One Hour Cleaners was a tenant on the subject property pursuant to a lease assignment entered into on December 20, 1982. In the assignment, One Hour Cleaners agreed to "assume and perform all duties and obligations required by the terms of the lease" of the former lessee and acknowledged and agreed it was "liable for all the terms, covenants and conditions of the said lease and underst[ood] specifically the provisions of Article X."

Section 8.1 of the lease contained affirmative covenants made by the tenant:

> "*Section 8.1 Affirmative Covenants.* Tenant covenants at
> its expense at all times during the Lease Term and such further time
> as Tenant occupies the Leased Premises or any part thereof,
>
> * * *
>
> M. To remove, at the termination of this Lease, provided
> Tenant is not in default, such of Tenant's moveable trade fixtures,
> and other personal property, as are not permanently affixed to the

---

[1] Palatine Associates did not state the statutory basis for its motion to dismiss, but the parties and the trial court treated the motion as a motion for summary judgment.

2

Leased Premises; to remove such of the alterations and additions and signs made by Tenant as Landlord may request; to repair any damage caused by such removal; and peaceably to yield up the Leased Premises and all alterations and additions thereto (except such as Landlord has requested Tenant to remove) and all fixtures, furnishings, floor coverings and equipment which are permanently affixed to the Leased Premises, including carpet, which, for the purpose of this Lease shall be deemed to be permanently affixed to the Leased Premises, which shall thereupon become the property of the Landlord, in clean and good order, repair and condition, damage by fire or other unavoidable casualty excepted. Any personal property of Tenant not removed within five (5) days following such termination shall, at Landlord's option, become the property of the Landlord."

Article IX of the lease contained a section concerning the effect of a taking of the subject property by eminent domain:

"*Section 9.2 Eminent Domain.* If the whole of the Leased Premises shall be taken by any public authority under the power of eminent domain, the Lease Term shall cease as of the day possession shall be taken by such public authority, and Tenant shall pay rent up to that date with an appropriate refund by Landlord of

such rent as may have been paid in advance for any period subsequent to the date possession is taken. *** All compensation awarded for any taking under the power of eminent domain, whether for the whole or a part of the Leased Premises, shall be the property of Landlord, whether such damages shall be awarded as compensation for diminution in the value of the leasehold or to the fee of the Leased Premises or otherwise and Tenant hereby assigns to Landlord all of the Tenant's rights, title and interest in and to any and all such compensation; provided, however, that Landlord shall not be entitled to any award specifically made to Tenant for the taking of Tenant's trade fixtures, furniture or leasehold improvements to the extent of the cost to tenant of said improvements (exclusive of Landlord's contribution), less depreciation computed from the date of said improvements to the expiration of the original term of this Lease."

Article X contained a provision concerning the tenant's continued occupation after termination of the lease:

"*Section 10.10 Holdover by Tenant.* In the event Tenant remains in possession of the Leased Premises after the expiration of the tenancy created hereunder, and without the execution of a new lease, Tenant, at the option of Landlord, shall be deemed to be

4

occupying the Leased Premises as a tenant from month to month, at twice the Fixed Minimum Rent and percentage rent, subject to all the other conditions, provisions and obligations of this Lease in so far as the same are applicable to a month-to-month tenancy."

There was also a provision in the lease stating that "[a]ny notice or demand from Landlord to Tenant or from Tenant to Landlord shall be mailed by registered or certified mail."

The lease was amended several times to extend the date of the termination of the lease and to adjust the amount of the rent. After the last amendment, the termination date of the lease was January 31, 2004, and the rent was $11,250 annually, or $937.50 per month. One Hour Cleaners remained on the subject property and paid rent of $937.50 through April 2009; its payments for March 2009 and April 2009 were for less than the balance due. After April 2009, One Hour Cleaners stopped making payments to Palatine Associates; it is not clear from the record whether One Hour Cleaners remained on the subject property.

On December 22, 2006, the Village filed a complaint to condemn the subject property so that it could build a police station, among other municipal uses. In its complaint, the Village sought "to acquire fee simple title in and to the real property, together with all improvements and appurtenances attached to and part of said real estate" described in the legal description. In its prayer for relief, the Village asked "[t]hat plaintiff, by this proceeding, acquire the ownership of the said property in fee simple, free from all liens and claims whatsoever." One Hour Cleaners was named as a party defendant to the complaint and was served with process, and there is no claim that it did not receive all required notices.

On June 9, 2009, the trial court entered two agreed final judgment orders concerning the Village's condemnation action; however, One Hour Cleaners did not agree to the orders. One provided just compensation to Sears for its leasehold in the amount of $3.25 million. The other provided just compensation for "the fee simple title to real property described in [the Village's] complaint to condemn ***, subject only to the lease of Sears and excluding any interest of Sears" for $6.15 million. The Village deposited the funds with the Cook County treasurer, and on July 9, 2009, the court allowed Palatine Associates to withdraw the bulk of the award of $6.15 million, ordering $2 million to be retained by the Cook County treasurer pending certain tenants' interest in the award. On the same day, the court entered an order vesting title to the subject property in the Village, subject to the lease of Sears and excluding any interest of Sears. The order also authorized the Village to take immediate possession of the subject property other than that portion occupied by Sears. Also on July 9, the trial court gave leave for One Hour Cleaners to file its appearance instanter and to file its petition for apportionment by August 11, 2009.

On July 27, 2009, One Hour Cleaners filed its appearance and a motion to have a judicial determination of its portion of just compensation, claiming to have a compensable interest in the award to Palatine Associates because it had improved the property with "substantial cleaning fixtures" that contributed to the value of the property. Palatine Associates moved to bar One Hour Cleaners' claim, and on September 9, 2009, One Hour Cleaners then filed an amended petition for just compensation, claiming that it had a compensable interest in the award. It included a statement that it "ha[d] been a tenant at the subject property since 1982 under a written lease, said lease being renewed on numerous occasions the last being in 1998, expiring in 2003.

6

No. 1-10-1002

The leasehold became a month to month tenancy." One Hour Cleaners also attached an appraisal of its trade fixtures to the amended petition, which suggested a fair market value of $76,850 for the trade fixtures.

On October 8, 2009, Palatine Associates filed a motion to dismiss One Hour Cleaners' claim for apportionment. In its motion, Palatine Associates made a number of arguments that One Hour Cleaners was not entitled to compensation based on the provisions of the lease. In its response, One Hour Cleaners stated that the motion to dismiss was "paramount to a petition for summary judgment," and argued that there were issues of fact to be determined. During oral argument, Palatine Associates agreed that their motion was in the nature of a motion for summary judgment, but argued that there were no questions of fact. The trial court issued its memorandum decision and order on January 28, 2010, finding that One Hour Cleaners did not have any interest in the final award, and denied its petition for compensation.

On February 5, 2010, One Hour Cleaners filed a motion to reconsider, which was denied by the trial court on March 18, 2010. On April 7, 2010, the trial court entered a finding that there was no just reason for delaying an appeal from its March 18, 2010, order.[2] One Hour Cleaners then filed the instant appeal.

ANALYSIS

On appeal, One Hour Cleaners argues that the trial court erred in finding in favor of

---

[2] The trial court's order included language from Supreme Court Rule 304(a) (134 Ill. 2d R. 304(a)) indicating that there was no just reason for delaying an appeal, but did not include a statement that the March 18, 2010, order was a final and appealable order.

7

No. 1-10-1002

Palatine Associates, because it found as a matter of law that the lease was terminated and that One Hour Cleaners did not have an interest in the condemnation award.[3]  We affirm.

The standard of review from the granting of summary judgment is *de novo*.  *Weather-Tite, Inc. v. University of St. Francis*, 233 Ill. 2d 385, 389 (2009) ("We review appeals from summary judgment rulings *de novo*").  The Code of Civil Procedure (Code) permits a trial court to grant summary judgment only "if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  735 ILCS 5/2-1005(c) (West 2008).

"Summary judgment is a drastic measure and should only be granted if the movant's right to judgment is clear and free from doubt."  *Outboard Marine Corp. v. Liberty Mutual Insurance Co.*, 154 Ill. 2d 90, 102 (1992).  However, "[m]ere speculation, conjecture, or guess is insufficient to withstand summary judgment."  *Sorce v. Naperville Jeep Eagle, Inc.*, 309 Ill. App. 3d 313, 328 (1999).  A defendant moving for summary judgment bears the initial burden of proof.  *Nedzvekas v. Fung*, 374 Ill. App. 3d 618, 624 (2007).  The defendant may meet his burden of proof either by affirmatively showing that some element of the case must be resolved in his favor, or by establishing " 'that there is an absence of evidence to support the nonmoving party's case.' "  *Id.*, quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).

" 'The purpose of summary judgment is not to try an issue of fact but *** to determine whether a triable issue of fact exists.' "  *Schrager v. North Community Bank*, 328 Ill. App. 3d

---

[3] The trial court did not explain its holding, finding simply that "the Tenant does not have an interest in the final award."

696, 708 (2002) (quoting *Luu v. Kim*, 323 Ill. App. 3d 946, 952 (2001)). " 'To withstand a summary judgment motion, the nonmoving party need not prove his case at this preliminary stage but must present some factual basis that would support his claim.' " *Schrager*, 328 Ill. App. 3d at 708 (quoting *Luu*, 323 Ill. App. 3d at 952). We may affirm on any basis appearing in the record, whether or not the trial court relied on that basis or its reasoning was correct. *Ray Dancer, Inc. v. DMC Corp.*, 230 Ill. App. 3d 40, 50 (1992).

In addition, this case concerns the trial court's interpretation of a contract as a matter of law. A contract construed as a matter of law by the trial court may be construed independently by a reviewing court, unrestrained by the trial court's judgment. *Fleet Business Credit, LLC v. Enterasys Networks, Inc.*, 352 Ill. App. 3d 456, 469 (2004) (citing *Lewis X. Cohen Insurance Trust v. Stern*, 297 Ill. App. 3d 220, 232 (1998)); *Zale Construction Co. v. Hoffman*, 145 Ill. App. 3d 235, 240 (1986). Accordingly, our review from a trial court's interpretation of a contract as a matter of law is *de novo. Avery v. State Farm Mutual Automobile Insurance Co.*, 216 Ill. 2d 100, 129 (2005).

In the case at bar, One Hour Cleaners claims to have a compensable interest in certain machinery and dry cleaning equipment because they are trade fixtures. A trade fixture is personal property of the tenant that is affixed to the realty for purposes of carrying on the tenant's business. *Southwest Bank of St. Louis v. Poulokefalos*, 401 Ill. App. 3d 884, 889 (2010) (citing *Nokomis Quarry Co. v. Dietl*, 333 Ill. App. 3d 480, 484 (2002)); see also *Sword v. Low*, 122 Ill. 487, 499-500 (1887). There is a rebuttable presumption that items installed by a tenant for the purpose of carrying on a trade are trade fixtures. *Griffiths v. Office of the State Fire Marshal*,

301 Ill. App. 3d 658, 661 (1998); *Sword*, 122 Ill. at 499-500. Courts also apply a three-part test to determine whether a fixture is a trade fixture that considers "(1) the means by which the item has been annexed to the real estate; (2) whether it is adapted to and necessary for the purpose to which the premises is devoted; and (3) the intent of the parties." *Griffiths*, 301 Ill. App. 3d at 661 (citing *B. Kreisman & Co. v. First Arlington National Bank*, 91 Ill. App. 3d 847, 852 (1980)). A trade fixture is the tenant's property and may be removed by the tenant so long as the removal does not damage the realty. *Southwest Bank*, 401 Ill. App. 3d at 889; see also *Schreiber v. Chicago & Evanston R.R. Co.*, 115 Ill. 340, 345-46 (1885). Thus, unlike a fixture, which becomes part of the realty belonging to the landlord, a trade fixture remains the property of the tenant and compensation for a trade fixture taken by eminent domain is owed to the tenant. *Empire Building Corp. v. Orput & Associates, Inc.*, 32 Ill. App. 3d 839, 841 (1975).

In the case at bar, One Hour Cleaners' equipment and machinery are considered trade fixtures. While One Hour Cleaners attempts to frame the status of the items as a question of fact, Palatine Associates accepts their characterization as trade fixtures, as do we. Thus, as a general matter, if the Village took One Hour Cleaners' trade fixtures by eminent domain, One Hour Cleaners would be entitled to a portion of the compensation award.

However, the terms of the lease between One Hour Cleaners and Palatine Associates prevent One Hour Cleaners from being compensated for its trade fixtures. As an initial matter, even though the lease expired in 2004, the terms of the lease still governed the dealings between One Hour Cleaners and Palatine Associates. One Hour Cleaners continued to occupy the subject property and pay rent through April 2009; after April 2009, One Hour Cleaners ceased paying

rent. Under the holdover provision in the lease, the lessee became a month-to-month tenant when One Hour Cleaners continued to possess the subject property; One Hour Cleaners argues that it was a holdover tenant and not a month-to-month tenant. We need not resolve this dispute since under either kind of tenancy, the terms of the written lease continue to govern the conduct of the parties. *Roth v. Dillavou*, 359 Ill. App. 3d 1023, 1027 (2005).

The lease's condemnation clause, found in section 9.2 of the lease, provides:

"All compensation awarded for any taking under the power of eminent domain, whether for the whole or a part of the Leased Premises, shall be the property of Landlord, whether such damages shall be awarded as compensation for diminution in the value of the leasehold or to the fee of the Leased Premises or otherwise and Tenant hereby assigns to Landlord all of the Tenant's rights, title and interest in and to any and all such compensation; provided, however, that Landlord shall not be entitled to any award specifically made to Tenant for the taking of Tenant's trade fixtures, furniture or leasehold improvements to the extent of the cost to tenant of said improvements (exclusive of Landlord's contribution), less depreciation computed from the date of said improvements to the expiration of the original term of this Lease."

Thus, under the terms of the lease, One Hour Cleaners assigned all of its rights to compensation to Palatine Associates except for "any award specifically made" to One Hour Cleaners for its

trade fixtures.

Parties can include a clause in a contract governing their rights to compensation in the event of a condemnation proceeding. See, *e.g.*, *Corrigan v. City of Chicago*, 144 Ill. 537, 549-550 (1893); *United States v. Petty Motor Co.*, 327 U.S. 372, 376 (1946); *United States v. 1.357 Acres of Land*, 308 F.2d 200, 203-04 (7th Cir. 1962); *Select Lake City Theatre Operating Co. v. Central National Bank in Chicago*, 277 F.2d 814, 817 (7th Cir. 1960). One Hour Cleaners and Palatine Associates included such a clause, agreeing that One Hour Cleaners was not entitled to any compensation arising from its leasehold interest unless there was a specific award made for its trade fixtures. There was no such specific award made. The condemnation award consists of $6.15 million for "the fee simple title to real property described in [the Village's] complaint to condemn ***, subject only to the lease of Sears and excluding any interest of Sears." There is no reference to One Hour Cleaners or to trade fixtures. Thus, One Hour Cleaners is not entitled to any portion of the compensation award.

One Hour Cleaners argues that there is no requirement that "all claims for apportionment must be contained within the initial condemnation award as a matter of law." One Hour Cleaners misinterprets Palatine Associates' argument. Palatine Associates is not arguing that as a matter of law, all claims for apportionment must be included in the condemnation award. Instead, it argues, and we agree, that *given the language of the lease*, in order for One Hour Cleaners to be entitled to receive compensation, there must have been a specific award for its trade fixtures. Therefore, upon our *de novo* review, One Hour Cleaners has no interest in the compensation award.

Additionally, as another basis, we also find that One Hour Cleaners was prevented from

claiming any portion of the compensation award because the lease terminated at the time the Village took possession of the Subject Property. Under the lease, One Hour Cleaners' trade fixtures were divided into "moveable" and permanent trade fixtures. Under section 8.1(M) of the lease, One Hour Cleaners was entitled to remove its moveable trade fixtures at the termination of the lease, while its permanent trade fixtures became the property of Palatine Associates. We must consider the status of each of these subcategories to determine whether One Hour Cleaners had any interest in the compensation award.

Under the lease, One Hour Cleaners' moveable trade fixtures included all trade fixtures not permanently affixed to the property. As trade fixtures, the moveable trade fixtures remained One Hour Cleaners' property, and One Hour Cleaners could remove them. See *Southwest Bank*, 401 Ill. App. 3d at 889. In fact, under the lease, One Hour Cleaners was required to remove the moveable trade fixtures at the termination of the lease; if One Hour Cleaners did not remove them within five days, they could become Palatine Associates' property at Palatine Associates' option. However, there is no indication that One Hour Cleaners actually removed its moveable trade fixtures.

Despite One Hour Cleaners' interest in its moveable trade fixtures, it was not entitled to any compensation for them because they were not taken. One Hour Cleaners argues that there is no requirement that the Village needed to specifically seek trade fixtures in its condemnation complaint for them to be included in the condemnation award. However, the complaint is required to contain a description of the property sought. 735 ILCS 30/10-5-10 (West 2008).

In the case at bar, the Village took a fee simple title in the real property described in the

13

complaint but did not indicate that it was seeking any personal property, which would include the moveable trade fixtures. "As a matter of common law, a taking of real estate or a leasehold does not affect the ownership of personal property on, but not affixed to, the premises." *National R.R. Passenger Corp. v. Faber Enterprises, Inc.*, 931 F.2d 438, 442 (7th Cir. 1991). Thus, we cannot find that One Hour Cleaners should have been compensated for property that the Village did not take and that One Hour Cleaners had the right to remove under the lease.

The other category of trade fixtures defined by the lease was the category of permanent trade fixtures, which included trade fixtures permanently affixed to the property. Under the lease, once the lease was terminated, permanent trade fixtures became the property of Palatine Associates. Thus, if the lease was terminated, then One Hour Cleaners would not have had an interest in any compensation award because it assigned its interest in its permanent trade fixtures to Palatine Associates.

We find that the lease was terminated. Under the lease's condemnation clause, "[i]f the whole of the Leased Premises shall be taken by any public authority under the power of eminent domain, the Lease Term shall cease as of the day possession shall be taken by such public authority." The Village deposited the condemnation award with the Cook County Treasurer on July 7, 2009, and an order vesting title in the Village was entered on July 9, 2009, which allowed the Village to take immediate possession of the Subject Property, except for the portion occupied by Sears. Thus, the lease terminated on July 9, 2009.

One Hour Cleaners argues that the lease was not terminated on July 9, 2009, but was terminated on November 4, 2009. On November 4, 2009, the Village filed an emergency motion

14

for immediate possession because All American Title Agency, another one of Palatine Associates' tenants, refused to vacate the subject property. We do not find that the lease terminated on November 4, 2009, rather than on July 9, 2009. As of July 9, 2009, the Village had a right to take immediate possession of the subject property; the fact that some tenants refused to allow the Village to possess the property does not extend the term of the lease.

Additionally, One Hour Cleaners' argument that it retained all of its rights under the lease because it was granted leave to file a petition for apportionment prior to the entry of the July 9, 2009, order vesting title is unpersuasive. The terms of the lease governed the rights of the parties to compensation, and the lease provided that it would terminate when the Village took the subject property by eminent domain. Thus, the lease terminated on July 9, 2009, and Palatine Associates had ownership of the permanent trade fixtures. "A lease provision granting ownership rights in fixtures to the landlord*** prevents the tenant from recovering the value of any improvements." *Faber*, 931 F.2d at 441 (citing *Select Lake*, 277 F.2d at 817); see also *Corrigan*, 144 Ill. at 549-50.. Therefore, the termination provision also prevented One Hour Cleaners from any interest in the compensation award.[4]

Finally, One Hour Cleaners argues that the termination provision and the condemnation clause create an ambiguity as to the ownership of property at the time of termination of the lease. We do not find that argument persuasive. The termination provision provided that at the time of

_____

[4] Palatine Associates also raises issues with One Hour Cleaners' method of valuation, specifically with the appraisal submitted. However, since we have found that One Hour Cleaners has no interest in the award, there is no need to consider this issue.

15

termination, One Hour Cleaners had ownership of its moveable trade fixtures, while Palatine Associates had ownership of the permanent trade fixtures. The condemnation clause allowed One Hour Cleaners to recover for an award specifically made for its trade fixtures. Thus, since One Hour Cleaners only had an interest in its moveable trade fixtures, it would be entitled to an award specifically made for the moveable trade fixtures. Since there was none, they are not entitled to anything.

CONCLUSION

We find that One Hour Cleaners had no interest in the compensation award because (1) there was no specific award made for its trade fixtures and (2) the moveable trade fixtures were not taken and the termination clause gave ownership of the permanent trade fixtures to Palatine Associates.

Affirmed.