NOKOMIS QUARRY COMPANY, Plaintiff-Appellee, v. JOSEPH DIETL, Defendant-Appellant.

Fifth District    No. 5—01—0740

Opinion filed August 27, 2002.

Rick Verticchio, of Verticchio & Verticchio, of Gillespie, for appellant.

Thomas S. Sly and Mark E. Jackson, both of Samuels, Miller, Schroeder, Jackson & Sly, of Decatur, for appellee.

JUSTICE KUEHN delivered the opinion of the court:

Joseph Dietl appeals from the trial court's July 2, 2001, judgment following a bench trial and from the trial court's August 17, 2001,

order denying his motion to reconsider. He was ordered to pay Nokomis Quarry Company the sum of $11,501, plus costs. At issue on appeal is whether certain buildings and items were "trade fixtures" that Joseph Dietl could remove without liability at the expiration of his lease. Joseph Dietl also appeals from the trial court's award of compensatory damages.

The background facts of this case sadly remind us that the number of small family farms continues to rapidly decrease. Certain land in Montgomery County was owned by the Dietl family, having been purchased by Joseph Dietl's father. The son grew up in this farm family and took over the farming duties upon his father's 1978 death. On April 28, 1997, Joseph Dietl, as the guardian of the person and estate of his mother, took out a loan secured by the farm. The mortgage was recorded in the Montgomery County circuit court on May 6, 1997.

The mortgage document prepared by Boatmen's National Bank of Central Illinois contained a security interest provision, by which Joseph Dietl granted to the bank a security interest "in all goods now owned or hereafter acquired [that are] intended to be used or are actually used so as to become Fixtures." Additionally, the mortgage defined the premises to include "all improvements and fixtures *** now or hereafter existing or constructed upon the land, including but not limited to buildings and other structures."

Joseph Dietl's mother died in October 1998. He was the only heir.

At some point not specified in the record or the briefs, Joseph Dietl defaulted on the loan. On April 22, 1999, NationsBank, N.A., successor in interest to Boatmen's National Bank of Central Illinois, filed a mortgage foreclosure action against Joseph Dietl. The bank filed a notice of foreclosure, which was published in an area newspaper beginning on May 5, 1999. This notice contained a legal description of the property at issue, which included "all improvements and fixtures *** now or hereafter existing or constructed upon the Land, including but not limited to buildings and other structures." A decree of foreclosure was entered on October 4, 1999, and the property was set for a sheriff's sale on May 17, 2000. Prior to that sale, notice of the Montgomery County sheriff's sale was published in an area newspaper. That notice set forth the legal description of the real estate at issue and further indicated that the sale included "all buildings and improvements thereon[ ] and the tenements, hereditaments[,] and appurtenances thereunto belonging."

Nokomis Quarry Company was the high bidder at the Montgomery County sheriff's sale. On May 19, 2000, the Montgomery County sheriff conveyed the property to Nokomis Quarry Company. This sheriff's deed included the legal description of the farmland, but it did

not specifically reference any fixtures or buildings located on the farmland.

At the conclusion of the May 17, 2000, sale, Joseph Dietl informed Nokomis Quarry Company that he had a lease (between himself and his now-deceased mother) to farm the land. A copy of this lease is not included in the record. By agreement, the trial court entered an order on June 13, 2000, modifying the court's award of the possession of the property to Nokomis Quarry Company. In this order, the trial court acknowledged that Joseph Dietl entered into a farm lease with his mother on March 1, 1998, and that he could continue to farm the land until December 31, 2000, at which time he owed Nokomis Quarry Company $8,000 in rent and was required to vacate the premises.

Sometime between May 17, 2000, and December 31, 2000, Joseph Dietl removed the following items from the farm:

(1) Unloading fixtures from the tops of the grain silos
(2) A one-car garage building
(3) An egg-house building
(4) A storage building
(5) Tubular fencing.

All of the items removed had been on the farmland for a long period of time.

Nokomis Quarry Company sued Joseph Dietl for damages resulting from the removal of these items. That suit was filed on September 25, 2000. The complaint sought $60,000. The case proceeded to a trial, at which time both sides presented expert witness testimony on the valuation of these assets. Both sides also presented arguments on the question whether the removed items were considered fixtures and were therefore the property of Nokomis Quarry Company or whether the items were trade fixtures of a type that Joseph Dietl was entitled to remove from the property.

The trial court noted that the mortgage, which was the subject of the foreclosure sale, included all fixtures. The trial court reasoned that the Dietl family intended these items to remain with the real estate and that these items were an integral part of the farm operation as it existed on the date of the foreclosure sale. In conclusion, the trial court found that Joseph Dietl had no right to remove the property from the farm. In a thorough discussion of the issue of damages, the trial judge determined that Nokomis Quarry Company was entitled to damages in the amount of $11,051. Broken down, this award included $10,000 for the replacement of the unloaders, $1,050 for the gates, and $1 for the buildings.

■ A case tried without a jury requires the trial judge to weigh all the evidence and make findings of fact. *Hendricks v. Riverway Harbor*

*Service St. Louis, Inc.*, 314 Ill. App. 3d 800, 807, 732 N.E.2d 757, 762 (2000). When a party challenges a trial court's bench-trial ruling, we defer to the trial court's factual findings unless they are contrary to the manifest weight of the evidence. *Jackson v. Bowers*, 314 Ill. App. 3d 813, 818, 731 N.E.2d 1252, 1257 (2000), citing *First Baptist Church of Lombard v. Toll Highway Authority*, 301 Ill. App. 3d 533, 542, 703 N.E.2d 978, 984 (1998). A trial court's judgment following a bench trial will be upheld if there is any evidence supporting it. *Hendricks*, 314 Ill. App. 3d at 807, 732 N.E.2d at 762.

We must first address the issue of whether the items removed were fixtures or trade fixtures.

■ In Illinois, a fixture is real property that is incorporated into or attached to realty. *A&A Market, Inc. v. Pekin Insurance Co.*, 306 Ill. App. 3d 485, 488, 713 N.E.2d 1199, 1202 (1999). A fixture is deemed a part of the real estate and therefore cannot be removed by a tenant without incurring liability. Whether something is a fixture rather than a piece of personal property depends upon the nature of its attachment to the real estate, its adaptation to and necessity for the purpose for which the premises are devoted, and whether or not it was intended that the item should be considered to be a part of the realty. *Harrisburg Community Unit School District No. 3 v. Steapleton*, 195 Ill. App. 3d 1020, 1024, 553 N.E.2d 76, 79 (1990). Intent is the critical factor to be considered in determining whether the item is a fixture or personal property. *Harrisburg Community Unit School District No. 3*, 195 Ill. App. 3d at 1024, 553 N.E.2d at 79. The intent at issue is the intent to permanently improve real estate. *B. Kreisman & Co. v. First Arlington National Bank of Arlington Heights*, 91 Ill. App. 3d 847, 852-53, 415 N.E.2d 1070, 1074-75 (1980).

■ Items that are attached to realty by a tenant for the purpose of carrying on a trade are considered trade fixtures. *Empire Building Corp. v. Orput & Associates, Inc.*, 32 Ill. App. 3d 839, 841, 336 N.E.2d 82, 84 (1975), citing 36A C.J.S. *Fixtures* § 38 (1961). A trade fixture is treated differently in the law. A tenant would be allowed to remove a trade fixture from the realty if it is something that the tenant placed on the leased premises. 36A C.J.S. *Fixtures* § 38 (1961). Removal is not allowed if it would damage the realty. 36A C.J.S. *Fixtures* § 38 (1961). Removal is allowed only if, after the fixture is removed, the realty is the same as it was prior to the tenant's tenancy. 36A C.J.S. *Fixtures* § 38 (1961). In other words, a fixture is a trade fixture when the tenant leases property and adds a fixture for use in the tenant's business. Before the lease expires, the tenant would be allowed to remove a trade fixture, so long as the tenant did not damage the realty in the process of the removal.

■ We agree with the trial court's conclusion that the items in question were ordinary fixtures. The fixtures were a part of the real estate and were put in place originally with an intent that they would stay on the land. Furthermore, the placement of these "fixtures" predated Joseph Dietl's March 1, 1998, lease. Had Joseph Dietl added the buildings or the unloaders during the term of his lease, he might have had an argument that the fixtures were removable trade fixtures. However, that did not happen. All of the items in question were fixtures.

We next address the issue of the ownership of these fixtures.

■ The mortgage granted a lien in the real estate and the fixtures. The foreclosure notice listed the fixtures. The notice of the sheriff's sale listed the fixtures. The lease was entered into subsequent to the mortgage. Therefore, the leased realty was subject to the mortgage. Joseph Dietl was on either actual notice or constructive notice of the mortgage. He could not take greater rights to the real estate and fixtures than his mother (the landlord) had the power to convey. His mother had already conveyed to the bank, via the mortgage, the right to those fixtures. The bank conveyed those fixtures at the foreclosure sale conducted by the Montgomery County sheriff. The rights, title, and deed to the real estate included the rights, title, and deed to the fixtures. Joseph Dietl correctly points out that the sheriff's deed failed to specifically reference the fixtures. However, there is no legal requirement that the fixtures must be referenced in the deed in order to keep them from passing by operation of law. Because fixtures are considered to be part of the realty, they are conveyed when the real estate is conveyed, unless they are specifically excluded. See *A&A Market, Inc.*, 306 Ill. App. 3d at 488, 713 N.E.2d at 1202-03 (stating that gas station fixtures are a part of the real estate to which they are attached and, in the absence of a contract providing otherwise, are a part of the realty).

We agree with the trial court's determination that the items in question were fixtures. Those fixtures passed to Nokomis Quarry Company by operation of law when it purchased the real estate upon which the fixtures were located. Joseph Dietl had no right to remove the fixtures from the property.

■ Joseph Dietl also claims that the trial court's compensatory damages award was contrary to the manifest weight of the evidence. In any case, the party seeking damages bears the burden of proving those damages to a reasonable degree of certainty. *Hausmann v. Hausmann*, 231 Ill. App. 3d 361, 370, 596 N.E.2d 216, 221 (1992). The evidence presented by the claimant on the issue of damages must not be remote, speculative, or uncertain. *Hausmann*, 231 Ill. App. 3d at 370, 596 N.E.2d at 221. Where evidence of damages is based, at least

in part, upon the testimony of witnesses—both lay and expert—a determination of the witness's credibility must be made. *Hendricks*, 314 Ill. App. 3d at 807, 732 N.E.2d at 763. We cannot idly substitute our judgment for that of the trial judge, who "had the opportunity to see and hear each witness, to observe the demeanor of each witness, and to assess the credibility of each witness." *Hendricks*, 314 Ill. App. 3d at 807, 732 N.E.2d at 763.

We have carefully reviewed the record and the briefs on appeal. There is ample evidence supporting the trial court's determination of damages. Given the witness credibility issues, as well as some conflicts in the evidence, we are not able to reach a conclusion that the trial court's judgment was contrary to the manifest weight of the evidence.

For the foregoing reasons, the judgment of the circuit court of Montgomery County is hereby affirmed.

Affirmed.

MAAG, P.J., and HOPKINS, J., concur.