FIFTH DIVISION

No. 1-09-2387

| | | |
|---|---|---|
| SOUTHWEST BANK OF ST. LOUIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellant, | ) | Cook County. |
| | ) | |
| v. | ) | |
| | ) | |
| DIMITRIOS POULOKEFALOS and | ) | Nos. 08L051336 and |
| NIKOLAOS KALOURIS, Individually | ) | 08L013689 |
| and as Beneficiaries of Chicago Title | ) | |
| Land Trust Company, Successor to | ) | |
| LASALLE BANK, N.A., as Trustee | ) | The Honorable |
| under Trust No. 4020, | ) | Alexander P. White, |
| | ) | Judge Presiding. |
| Defendants-Appellees. | ) | |
| | ) | |

JUSTICE FITZGERALD SMITH delivered the opinion of the court:

Plaintiff Southwest Bank of St. Louis (Bank) instituted a replevin suit against defendants Dimitrios Poulokefalos and Nikolaos Kalouris (Owners or Landlords), individually and as beneficiaries of a land trust. Bank now appeals from an order of the circuit court finding that certain distrained property was permanently attached to real estate such that it had become fixtures and, accordingly, Landlords had a priority interest over the distrained property superior to the Bank's Uniform Commercial Code lien (810 ILCS 5/9-102 (West 2008)). For the following reasons, we affirm.

BACKGROUND

Landlords own a commercial building located at 1975 Cornell Avenue in Melrose Park,

Illinois (the Premises). In December 2003, Landlords entered into a lease agreement (the Lease) with Converters Extruded Films, Inc. (Original Tenant), leasing the premises for a term of five years, from February 1, 2004, to January 31, 2009. The lease included a provision (section 9.1.12) stating that, at termination:

> "all alterations, additions, floor covering and carpeting
> thereto and all decorations, fixtures, furnishings, partitions,
> heating, ventilating and cooling equipment and other equipment,
> which are permanently affixed to the Premises, which (if not then
> the property of the Landlord) shall thereupon become the property
> of Landlord without any payment to tenant []."

In 2003, Original Tenant installed various large pieces of equipment to be used in the commercial production of plastics. Owner Poulokefalos testified at trial that the equipment was brought in piece by piece, reassembled and welded by Original Tenant. According to Owners, the equipment included silos and large extruding machines that ran from floor to ceiling, were bolted to the floor, the ceiling rafters and joists, and the walls, along with a series of pipes, tubes, and conduit carrying raw materials and electricity to the machinery. The assembly required removing some rafters in the ceiling and replacing them with new rafters. After the silos were installed, a wall was built to divide the space rented by Original Tenant. Owner Poulokefalos testified that he discussed with Original Tenant that the machinery could never be removed because it required the removal of some of the rafters. As a result, Original Tenant considered purchasing the building.

Two years later, however, Original Tenant sold its business to C. Extruded Films, L.L.C., a Missouri limited liability company (Second Tenant). On December 5, 2005, Original Tenant assigned its lease to Second Tenant, and Second Tenant remained in possession of the premises thereafter.

On December 5, 2005, Bank loaned Second Tenant one million dollars (the loan). The loan was secured by a commercial security agreement between Bank and Second Tenant, pursuant to which Second Tenant granted a security interest in all equipment, inventory and other property of Second Tenant. The security agreement and financing statement generically identified "fixtures" as property security for the loan. Shortly thereafter, on December 20, 2005, Bank filed its UCC financing statement with the Missouri Secretary of State.[1] However, Bank did not record its UCC financing statement with the Cook County recorder of deeds.

Second Tenant ceased paying rent in September 2008 and abandoned the leasehold in October 2008. In doing so, it abandoned 12 plastic extruding machines and 3 silos that were attached to the floors, ceilings and duct work, as well as heavy duty electrical systems and piping connecting the machinery.

---

[1]Bank filed its financing statement with the Missouri Security of State. Tenant Two is organized under the laws of the State of Missouri, and is a "registered organization," as defined in section 9-102(70) of the Illinois Uniform Commercial Code (810 ILCS 5/9-102(70) (West 2008)). Pursuant to section 9-370(e), the location of a registered organization is the state of organization. Therefore, Bank's UCC financing statement was properly filed in the State of Missouri. This is not at issue in this appeal.

No. 1-09-2387

Landlords filed a complaint and distress warrant on December 11, 2008, seeking to distrain the plastic extruding machines and silos still in Landlords' possession for past-due rent and property taxes.[2] Landlords claimed a landlords' lien on the equipment in the amount of $235,000.[3] The distrained property was inventoried in an exhibit to the distress warrant. On December 12, 2008, Bank filed a replevin lawsuit seeking attachment of the same property sought by Landlords to satisfy its rent claim. The two causes were consolidated on January 21, 2009.

A bench trial of Bank's replevin complaint was heard on December 29, 2008. At trial, Landlords claimed a priority interest over the trade fixtures and leasehold fixtures abandoned by Second Tenant by virtue of its landlord's lien for unpaid rent and section 9.1.12 of the lease. Bank claimed a priority interest by virtue of its UCC financing statement.

At trial, owner Poulokefalos testified that it was the intent of both himself and Original Tenant at the signing of the lease that Original Tenant would bring equipment into the building. However, there was no specific agreement about what would happen to the equipment at the termination of the lease other than section 9.1.12 of the lease, which he understood to mean "whatever is bolted in the floor stays with the building." Poulokefalos testified that the removal of the distrained property would cause substantial damage to the real estate. He testified that the

[2]This cause, LaSalle Bank, N.A. U/T/A No. 4020 v. C. Extruded Films, LLC, 08L13689, was filed in the circuit court of Cook County.

[3]A default judgment in the amount of $235,410.26 was entered against Second Tenant on February 26, 2009.

4

electrical panels, conduit, and air pipes servicing the equipment were attached to the walls and ceilings. According to Poulokefalos, at the time of the lease signing, the space in question was 50,000 square feet of open space. Original Tenant informed Poulokefalos that it needed a wall built. However, it had to install equipment before building the wall or it would be unable to bring the equipment in. Accordingly, a wall was constructed after Original Tenant installed the equipment at a cost of $30,000. Now, this wall must be removed in order to remove the equipment. Many rafters supporting the ceiling over a 24,000-square-foot area used by Original Tenant would also have to be removed and replaced at substantial cost that could exceed the value of the equipment. The equipment itself, welded together, would have to be dismantled by cutting it into pieces with a blowtorch, relegating it to scrap. Unbolting the equipment from the floors would leave many holes in the floor.

Edward Mundt, Second Tenant's general manager and chief financial officer, testified that machinery was bolted to the concrete floor with industrial anchor bolts. He did not know if the machinery was attached to the rafters. He could remove the machinery from the building, by breaking it down into several pieces, unbolting it from the floor, and lifting it with a fork truck. It could be moved out of the building through garage doors.

On June 10, 2009, the trial court entered a memorandum decision and judgment in which it made the following findings of fact and conclusions of law: (1) the Bank has a perfected security interest in all of its collateral; (2) perfection of the Bank's security interest in its collateral did not require a fixture filing; (3) Landlords had a perfected landlord's lien upon the disputed equipment; (4) the Bank's security interest in its collateral has priority over the

5

landlord's lien, and the Bank's security interest is entitled to satisfaction prior to the landlord's lien; (5) Landlords' right to possession of all fixtures and equipment permanently attached to the premises is superior to the Bank's security interest; (6) the disputed equipment cannot be removed from the premises without material damage to the premises; and (7) the disputed equipment is permanently attached to the premises and constitutes trade fixtures. The trial court concluded that the Bank's security interest is subordinate to the landlord's lien as to trade fixtures because the Bank did not file a fixture filing.

The Bank filed a motion to reconsider and to clarify the memorandum decision. Another hearing was held, after which the court entered a written order clarifying the judgment:

> "THE COURT FINDS that (1) the twelve (12) blow film
> extruders identified as Mach #1 to 12, (2) three (3) indoor silos
> with 50,000 lb. Capacity, and (3) the Landtech Q Series Stretch
> Wrap ('Trade Fixtures'), as identified on the Equipment List, are
> so permanently affixed to the real estate that they cannot be
> removed without material damage, and that they constitute trade
> fixtures;
>
> IT IS THEREFORE ORDERED that the Memorandum
> Decision and Judgment entered on June 10, 2009, is modified so as
> to provide that the Owners have priority as to the Trade fixtures
> and that the Bank has priority as to all other items on the
> Equipment List;

IT IS FURTHER ORDERED that the Bank may remove all property subject to the Bank's security interest, except the Trade Fixtures, provided that the Bank shall reimburse the Landlord for any damage to the premises caused by such removal."

The Bank appeals.

ANALYSIS

Bank first contends that the trial court erred in determining that the distrained properties were trade fixtures. Specifically, Bank contends that evidence adduced at trial failed to show that the distrained property was permanently attached to the real estate and could not be removed without substantial destruction of the Premises. We disagree.

In Illinois, fixtures and trade fixtures are differentiated under the law. A fixture is an item of personal property which is incorporated into or attached to realty. Nokomis Quarry Co. v. Dietl, 333 Ill. App. 3d 480, 484 (2002). Because a fixture is deemed a part of the realty, it cannot be removed by a tenant without incurring liability. Nokomis, 333 Ill. App. 3d at 484. A finding that certain property is a fixture requires the court to consider a number of factors, including the agreement and intent of the parties, the nature of the attachment to the real estate, and whether the property can be removed without damage to the real estate. See Crane Erectors & Riggers, Inc. v. La Salle National Bank, 125 Ill. App. 3d 658, 662 (1984).

A trade fixture is an item of personal property that is attached to the realty by a tenant for the purpose of carrying on the tenant's business. Nokomis, 333 Ill. App. 3d at 484. A tenant

may only remove a trade fixture from the realty if doing so would not damage the realty. Nokomis, 333 Ill. App. 3d at 484 ("[r]emoval is allowed only if, after the fixture is removed, the realty is the same as it was prior to the tenant's tenancy"). "In other words, a fixture is a trade fixture when the tenant leases property and adds a fixture for use in the tenant's business. Before the lease expires, the tenant would be allowed to remove a trade fixture, so long as the tenant did not damage the realty in the process of the removal." Nokomis, 333 Ill. App. 3d at 484.

On review of a bench trial, we will not disturb the trial court's findings of fact unless they are against the manifest weight of the evidence. Chicago Investment Corp. v. Dolins, 107 Ill. 2d 120, 124 (1985). A finding is against the manifest weight of the evidence only when an opposite conclusion is apparent or when the findings appear to be unreasonable, arbitrary, or not based on the evidence. Webb v. Mount Sinai Hospital & Medical Center of Chicago, Inc., 347 Ill. App. 3d 817, 826 (2004). "A trial court's judgment following a bench trial will be upheld if there is any evidence supporting it." Nokomis, 333 Ill. App. 3d at 484.

Here, the trial court found that all of the distrained property were fixtures that had been "permanently attached to the Premises, including floors, ceilings, and heavy duty electrical systems and cannot be removed without substantial destruction of the leasehold." The property distrained by Owners was itemized on the distress warrant and inventory. Prior to trial, Owners abandoned their claim to an inventoried fork lift truck, conceding that the fork lift was not attached to the real estate. The remaining inventoried property consisted mainly of huge manufacturing machines, known as blow film extruders, used to manufacture large rolls of plastic, and silos used to feed raw plastic pellets to the extruders. Owner Poulokefalos testified

8

at trial that the blow film extruders and silos were bolted to the floors, ceilings, and walls. The electrical fixtures and air pipes were attached in the same way. He testified that, at the time the distrained property was installed, the building was permanently modified to accommodate installation and connection of the equipment to the real estate: ceiling rafters were removed and relocated, and a permanent interior wall was built after the silos were installed. Owner further testified that the removal of the extruders and silos would affect the structural integrity of the building and destroy the equipment itself. Specifically, Owner testified that, to remove the large equipment, he would have to remove rafters as well as destroy part of the wall. He also testified that removal of the equipment would leave many holes in the cement floor.

Bank relies on Mundt's testimony that the silos, compressors and extruders could be removed without materially damaging the building. Bank asserts that the "Landlords offered no evidence to establish that removal of the Bank's Collateral form the Premises would damage the building." Our review of the record leads us to conclude differently. The building owner, Poulokefalos, who was present at the time the equipment was installed, testified that the property would be substantially damaged upon removal of the equipment. Mundt, on the other hand, who was not present when the equipment was installed, testified that the equipment could simply be unbolted from the floor and lifted out the door. A trial court is in a superior position to observe the witnesses while testifying, to judge their credibility, and determine the weight of their testimony. Cyclonaire Corp. v. ISG Riverdale, Inc., 378 Ill. App. 3d 554, 559 (2007). Accordingly, a trial court's findings of fact are entitled to great deference by this court. Cyclonaire Corp., 378 Ill. App. 3d 554, 559. Moreover, resolving conflicts relating to the

9

credibility of witnesses and the weight to be afforded their testimony is the province of the trial court. 1350 Lake Shore Associates v. Casalino, 352 Ill. App. 3d 1027, 1040 (2004). Here, the trial court heard the evidence presented at trial and resolved conflicts in favor of Owners. The trial court's finding that removal of the equipment would cause destruction to the building was not against the manifest weight of the evidence.

Next, Bank contends that the trial court erred in finding that Owners' interest in the distrained property had priority over Bank's unperfected UCC lien. Specifically, Bank relies on Cottrell v. Gersen, 296 Ill. App. 412 (1938), to argue that a landlords' right to distrain the personal property of a tenant for nonpayment of rent does not extend to grant Landlords a lien upon the tenant's property. We disagree.

Initially, we note that Bank has waived this argument by failing to raise it at the trial level. See Addis v. Exelon Generation Co., 378 Ill. App. 3d 781, 795 (2007) (failure to properly preserve an alleged error by both an objection at trial and a written post-trial motion constitutes a procedural default of that error on review). Waiver aside, we find Bank's argument unpersuasive.

At issue here is the application of rules of priority between Landlords' lien and Bank's asserted security interest in fixtures. The priority of parties' respective security interests is a question of law. Travelers Insurance Co. v. First National Bank of Blue Island, 250 Ill. App. 3d 641, 644-45 (1993). Our review of questions of law is *de novo*. See, *e.g.*, Du Page County Board of Review v. Department of Revenue, 339 Ill. App. 3d 230, 233 (2003).

A landlord's distress remedy arises under section 9-301 of the Code of Civil Procedure,

No. 1-09-2387

which provides:

> "In all cases of distress for rent, the landlord, by himself or
> herself, his or her agent or attorney, may seize for rent any personal
> property of his or her tenant that may be found in the county where
> such tenant resides, and in no case shall the property of any other
> person, although the same may be found on the premises, be liable
> to seizure for rent due from such tenant." 735 ILCS 5/9-302 (West
> 2008).

Illinois law grants a landlord a common law lien on a tenant's property for the non-payment of rent that is perfected by the filing of a distress warrant and inventory with the clerk of the court. 735 ILCS 5/9-302 (West 2008); First State Bank of Maple Park v. De Kalb Bank, 175 Ill. App. 3d 812, 815-16 (1988). Here, Landlords properly filed a distress warrant along with a written inventory and photographs. Cottrell is inapposite to the case at bar, where the parties in Cottrell failed to initiate the distress proceedings by filing a distress warrant. Cottrell, 296 Ill. App. 412. Unlike Cottrell, Landlords in the instant case properly initiated and prosecuted a distress proceeding by filing a complaint and copy of the distress warrant along with an inventory to the clerk of the court, served process on Second Tenant, and obtained a default judgment. Accordingly, after determining that the distrained items were fixtures, the trial court did not err in deciding that Landlords had perfected their lien by filing and prosecuting the distress warrant.

Moreover, the trial court did not err in finding that the perfected landlord's lien is superior to Bank's unperfected security interest with respect to all fixtures permanently attached

11

to the premises. The lien priorities between a landlord's lien and a UCC lien are governed by non-UCC principles. First State Bank of Maple Park, 175 Ill. App. 3d at 817. "Applying [these] non-UCC principles, generally a lien which is first in time has priority [citations] and is entitled to prior satisfaction out of the property it binds." First State Bank of Maple Park, 175 Ill. App. 3d at 817.

Bank established at trial that it filed a UCC financing statement with the Missouri Secretary of State claiming a security interest in property belonging to the tenant. However, the filing was insufficient to perfect its security interest in fixtures located on Landlords' property, where a fixture filing was also required in the Cook County recorder of deeds. 810 ILCS 5/9-501 (West 2008). Accordingly, Bank did not perfect its security interest in the fixtures, and the trial court correctly concluded that the perfected landlord's lien has priority over Bank's unperfected UCC lien under the common law rule of first in time, first in right.

For the foregoing reasons, we affirm the judgment of the circuit court of Cook County.

Affirmed.

TOOMIN, PJ., and HOWSE, J., concur.

No. 1-09-2387

**REPORTER OF DECISIONS - ILLINOIS APPELLATE COURT**
**(Front Sheet to be Attached to Each Case)**

Please use the following form

SOUTHWEST BANK OF ST. LOUIS,

Plaintiff-Appellant,

v.

DIMITRIOS POULOKEFALOS AND
NIKOLAOS KALOURIS, Individually
And as Beneficiaries of Chicago Title
Land Trust Company, Successor to
LASALLE BANK, N.A., as Trustee
Under Trust No. 4020,

Defendants-Appellees.

Docket No.

COURT
 Opinion
 Filed

No. 1-09-2387

Appellate Court of Illinois
First District, FIFTH Division

June 4, 2010
(Give month, day and year)

JUSTICES

JUSTICE JAMES FITZGERALD SMITH DELIVERED THE OPINION OF THE COURT:
TOOMIN, P.J., and HOWSE, J., concur.

APPEAL from the Circuit Court of Cook County; the Hon_____ Judge Presiding.

Lower Court and Trial Judge(s) in form indicated in margin:

Appeal from the Circuit Court of Cook County.

The Hon. ALEXANDER P. WHITE Judge presiding.

FOR APPELLANTS
John Doe, of Chicago

For APPELLEES, :

Indicate if attorney represents APPELLANTS or APPELLEES and include attorney's of counsel. Indicate the word or NONE if not represented.

APPELLANT: RICHARD C. JONES, JR., TINA M. JACOBS, Law Office of Jones & Jacobs

Smith and Smith of Chicago,

APPELLEE: ROBERT J. WAGNER, Robert J. Wagner, P.C.

(Joseph Brown, of counsel)
Add attorneys for third-party appellants and/or appellees.

13