**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2023 IL App (3d) 220519-U

Order filed October 25, 2023

_____

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2023

| | | |
|---|---|---|
| THOMAS KENNEDY, | ) | Appeal from the Circuit Court |
| | ) | of the 12th Judicial Circuit, |
| Plaintiff-Appellee, | ) | Will County, Illinois, |
| | ) | |
| v. | ) | Appeal No. 3-22-0519 |
| | ) | Circuit No. 22-SC-297 |
| | ) | |
| LEILANI SWICK, | ) | Honorable |
| | ) | Cory D. Lund, |
| Defendant-Appellant. | ) | Judge, Presiding. |

_____

JUSTICE BRENNAN delivered the judgment of the court.
Justices Peterson and Davenport concurred in the judgment.

_____

**ORDER**

¶ 1    *Held*: The trial court's finding that defendant breached the contract was against the manifest weight of the evidence. Reversed.

¶ 2    Plaintiff, Thomas Kennedy, filed a small claims complaint against defendant, Leilani Swick. Plaintiff alleged in count I of his operative complaint that defendant fraudulently failed to disclose on the Residential Real Property Disclosure Report (disclosure report) recurring issues with the foundation of the residential property that plaintiff purchased from defendant. Plaintiff alleged in count II of his amended complaint that defendant breached the parties' Multi-Board

Residential Real Estate Contract 7.0 (contract), which incorporated the disclosure report, by failing to disclose the residence's foundation issues and past repairs. Following a bench trial, the trial court entered judgment in favor of defendant and against plaintiff on count I and in favor of plaintiff and against defendant on count II for $10,000 plus costs of $314. For the reasons set forth below, we reverse the trial court's judgment as to count II.

¶ 3                                    I. BACKGROUND

¶ 4                              A. Real Estate Transaction

¶ 5        On November 4, 2019, the parties entered into a contract for plaintiff's purchase of the real estate located at 19506 Cherry Street, Mokena, Illinois (the residence). Defendant and Glenn Swick[1] were listed as the sellers. Defendant and her late husband, Herb, were the original builders and sole owners of the residence. The contract incorporated the disclosure report, which was executed by defendant on September 24, 2019, and by plaintiff on November 3, 2019.

¶ 6        Gloria Klischuk was plaintiff's real estate broker and testified that she accompanied plaintiff during his first tour of the residence. Thereafter, plaintiff requested that Klischuk ask defendant's real estate broker, Sandra Workman, whether the residence had any issues with water intrusion in the basement. Klischuk testified that Workman responded that there were some water issues in the lower-level family room but that they were fixed and that moisture sensors were subsequently installed in the basement. Workman testified that she asked Klischuk whether plaintiff wished to review documents related to the repairs prior to the sale and that Klischuk

_____

[1] Glenn was listed as a defendant in plaintiff's small claims case but, without objection from plaintiff, the trial court granted defendant's motion for a directed verdict as to Glenn. Glenn is not listed as a party on appeal.

declined. Klischuk denied any recollection of this conversation. The sale closed on December 9, 2019.

¶ 7        The disclosure report defined the scope of the required disclosures, stating, "These disclosures are intended to reflect the current condition of the premises and do not include previous problems, if any, that the seller reasonably believes have been corrected." Defendant answered "no" to the following questions on the disclosure report: (1) I am aware of flooding or recurring leakage problems in the crawl space or basement and (2) I am aware of material defects in the basement or foundation (including cracks and bulges). Defendant also testified that, prior to vacating the residence, she located receipts and other documents reflecting past repairs, which she left behind for plaintiff in a folder labeled "repairs." Plaintiff testified that this folder included several work orders reflecting repairs to cracks in the foundation and water intrusion into the basement.

¶ 8        While the physical copies of the work orders were not admitted into evidence, defendant's testimony outlined the substance thereof. Defendant testified that her late husband arranged for the repairs until his death in August of 2015, after which plaintiff personally arranged for at least two repairs in 2017 and 2019. Defendant's son also assisted her with the coordination of repairs after her husband's death. Both defendant and her late husband hired U.S. Waterproofing for some of these repairs.

¶ 9        Defendant testified as follows regarding the work orders: First, defendant verified her signature on a document that stated that a foundation crack in 1991 was sealed externally and internally against water intrusion. She confirmed that she reviewed the document before signing. Second, defendant denied knowledge of a service work order dated May 4, 2000. Third, defendant denied knowledge of a service work order dated September 13, 2002 that read, "one service crack"

3

and "originally wall clay repair." Fourth, defendant reviewed a service work order dated November 1, 2002, with a service description that read, "service crack." Fifth, defendant reviewed a service work order dated September 5, 2008. Sixth, defendant reviewed a service work order dated March of 2016, with a service description that read, "prep and repair one basement foundation crack and cut and replace two pieces of drywall in corner." She testified that she recalled this work being completed in the basement but denied recognition of the work order itself. Seventh, defendant reviewed a work order dated March 15, 2017, with a service description that read, "one service crack" and "originally wall clay repair." Eighth, defendant reviewed a service work order dated May 6, 2019, with a service description that read, "one service crack." Defendant scheduled this repair after she noticed water leaking onto the corner of the basement carpet. Upon inspection, it was determined that the water intrusion was caused by a hairline crack in the foundation, which defendant repaired. Defendant testified that, as of the date of her execution of the disclosure report, she did not believe there were any existing cracks in the foundation and that all issues had been resolved.

¶ 10                                    B. Subsequent Repairs to Residence

¶ 11          Plaintiff testified that he did not notice water leakage when he moved into the residence; however, in 2021, he accepted a free consultation from Everdry Waterproofing (Everdry), a company that specializes in waterproofing services. After receiving Everdry's recommendations, plaintiff reviewed the work orders left behind by defendant and decided to move forward with preventative waterproofing services. Everdry completed the waterproofing services in April and May of 2021.

¶ 12          Pierre Whitehead, Everdry's foreman, testified that plaintiff hired Everdry to stop water seepage into the residence from cracks in the walls. At that time, Mr. Whitehead had been

4

employed by Everdry for 16-17 years. Everdry installed interior drain tiles and sump pumps, as well as an exterior footing drain. Mr. Whitehead testified that they also sealed multiple cracks in the foundation of the residence. When asked whether the cracks were causing water intrusion, Mr. Whitehead responded, "Oh, yes." He further stated that cracks in the foundation can develop due to movement of the ground or from water intrusion.

¶ 13    In September of 2021, plaintiff noticed for the first time a crack on the exterior foundation on the south wall of the residence. Plaintiff testified that he called Everdry to inquire about the crack and was advised to remove the drywall to determine whether it had extended to the interior. Upon doing so, plaintiff discovered that it was, in fact, visible on the interior and measured approximately one and a half inches wide. Plaintiff testified that a portion of the crack near the floor was covered in a mud-like substance, which he believed showed the crack was serviced at some point in the past. Plaintiff ultimately hired Atlas Restoration (Atlas) to analyze the situation, and they determined that the cracks were caused by the residence shifting over many years. Atlas recommended the installation of four helical piers to restore the original position, as well as the sealing of all cracks in the foundation. Atlas completed this work in November of 2021. The record indicates that plaintiff paid $12,880 for the base contract, $250 for "JF2 Design," $161 for a Will County building permit, $124.95 for Fox Pest Control, and $373.01 for Home Depot supplies. Plaintiff's total cost was $13,538.96. On December 10, 2021, plaintiff sent a demand letter to defendant for the costs associated with the repairs.

¶ 14                                    C. Procedural History

¶ 15    On January 24, 2022, and without receiving a response to his demand letter, plaintiff filed his small claims complaint. He claimed that defendant owed him $10,000 due to a "deliberate misrepresentation" on the disclosure report regarding her purported lack of knowledge as to

5

material defects in the basement or foundation. Plaintiff stated that the crack he discovered in September of 2021 was intentionally covered with drywall on the interior and stucco on the exterior to conceal the existing foundation issues. He cited a 1999 crack repair by defendant, claiming it was the same crack at issue; the record, however, shows the repair actually occurred in 1991, not 1999. Plaintiff claimed that he would not have purchased this property had he known about the foundation issues and, therefore, suffered undue hardship. Defendant responded to plaintiff's demand letter on January 26, 2022, denying plaintiff's allegations and rejecting the demand for reimbursement.

¶ 16    On March 14, 2022, defendant filed her first motion to dismiss, arguing that plaintiff's claim was time-barred under the Residential Real Property Disclosure Act's (Disclosure Act) one-year statute of limitations. 765 ILCS 77/60 (West 2022). On May 11, 2022, plaintiff was granted leave to amend his complaint over defendant's objection. Thereafter, defendant withdrew her motion to dismiss.

¶ 17                                                        D. Trial

¶ 18    The bench trial commenced on October 26, 2022. At the close of the first day of trial, defendant moved for a directed verdict, arguing that plaintiff's claim was actually grounded in common law fraud and that he failed to prove the elements by clear and convincing evidence. The trial court indicated that plaintiff's claim was more akin to a breach of contract, and possibly fraud, claim, at which point plaintiff orally moved to amend his complaint to conform to the proofs. The trial court denied defendant's motion for a directed verdict and, without objection from defendant, granted plaintiff's motion to amend the complaint to conform to the proofs.

¶ 19    The second day of trial was scheduled for December 8, 2022. On November 9, 2022, plaintiff filed his operative two-count amended complaint, the basis of which was fraud and breach

of contract. In response to the amended complaint, defendant filed an answer to count I (fraud) and a second motion to dismiss count II (breach of contract). Defendant's motion to dismiss was based on plaintiff's purported reliance on defendant's breach of the implied duty of good faith and fair dealing, as defendant argued that Illinois does not recognize this as an independent duty among parties to a contract. Rather, she maintained that it is to be used as an interpretation tool if the terms of the contract allocate discretion in performance to either party. She further argued that the disclosure report only required the disclosure of current issues, and not those which occurred in the past if the seller reasonably believes the problem has since been corrected.

¶ 20    Plaintiff responded that defendant's failure to disclose eight separate foundation repairs, not the duty of good faith and fair dealing, formed the basis for breach and that the remaining issues were a question of fact precluding dismissal. The trial court denied defendant's motion to dismiss. Defendant then renewed her motion for directed verdict, which the trial court denied.

¶ 21    During closing arguments, the trial court sought clarification of the specific contract provisions plaintiff claimed were breached. Plaintiff stated that the basis for breach was defendant's answer of "no" to the following questions on the disclosure report: (1) I am aware of flooding or recurring leakage problems in the crawl space or basement and (2) I am aware of material defects in the basement or foundation (including cracks and bulges). Until this point, question (2) was the only provision specifically identified by plaintiff. Defendant did not object to this clarification or the trial court's consideration of question (1).

¶ 22    The trial court found in favor of defendant on count I, finding that plaintiff failed to prove by clear and convincing evidence that defendant engaged in fraudulent conduct. The trial court found in favor of plaintiff on count II and explained as follows:

THE COURT: \*\*\* I think, in my reading of the real estate disclosure form, in terms of the facts of this case, the Defendant, Ms. Swick, had, certainly had knowledge of flooding or recurring leakage problems in the crawl space or basement. Seven, eight, how many ever repairs, that to me is recurring. It is leakage even if it doesn't say in the same spot.

There was a problem with this basement. Repairs were made. That's the follow-up of what the awareness definition is and whether or not she was aware at the time she filled this out. Awareness, I am aware, according to the disclosure form, means to have actual notice or actual knowledge without specific investigation or inquiry.

Certainly, when you have got an eight repair situation on a basement, that is something that she was aware of. She fixed a few herself. They were recurring. But then the definition of 'material defect' comes in to play in a sense. But by saying 'No' to that 'aware of material defects,' based upon the definition, if you think it is repaired, it is not a material defect. *And I firmly believe that each and every time that Ms. Swick went in, she probably thought it was repaired and wouldn't have to be dealing with it anymore. I am confident she would have thought that, but it kept happening and happening and happening.*

\* \* \*

You can have flooding or recurring leakage without material defects. Eight, seven, eight, how many ever repairs over the time there was, including one being a year or two or so before the sale, I don't know how it is to be said that it is truthful

8

when Ms. Swick said, 'No,' to the question, 'Whether I am aware of flooding or recurring problems.'

Eight times—and Mr. Lee, I know you down played that. But when you look at these two things separately—and I think they are separate, the disclosures—it is not a true statement that, based on the evidence I heard, that Ms. Swick was not aware of flooding or recurring leakage problems in this basement.

\*\*\*

*And I think, in No. 2 [recurring leakage inquiry], she probably thought she did fix all the problems.* But with eight things, that's a recurring problem. Therefore, finding that Ms. Swick maybe even inadvertently put 'No' to Question No. 2. I am going to find that there was a breach of the contract by the entry of or the representation that there were no flooding or recurring problems. I will award damages at $10,000 plus costs \*\*\*.

\* \* \*

And Ms. Swick, I am not apologizing to you for my decision. You certainly didn't know the law behind these things, and you certainly didn't give a thought at all to a breach of contract involving the sale of this house. *You fixed everything that was broken. I get that.* \*\*\* (Emphases added.)

¶ 23   The trial court did not make a finding as to breach of contract for the failure to disclose material defects in the basement or foundation. Plaintiff was awarded $10,000 plus costs of $314. Defendant timely appealed.

¶ 24                                   II. ANALYSIS

9

¶ 25    On appeal, defendant first argues that the evidence presented at trial was insufficient to support the trial court's judgment in favor of plaintiff on count II of the amended complaint. In response, plaintiff argues that the trial court properly weighed the evidence and credibility of all witnesses at trial and issued an appropriate ruling therefrom. Defendant also argues that the trial court erred in denying defendant's motion to dismiss count II of plaintiff's amended complaint. For the reasons that follow, we reverse the trial court's judgment for plaintiff on count II. In light of our holding, we need not address defendant's argument related to the trial court's denial of her motion to dismiss.

¶ 26    The trial court found that defendant's indication on the disclosure report that she did not possess knowledge of flooding or recurring leakage problems in the crawl space or basement constituted a breach of contract. Defendant argues on appeal that the evidence presented at trial was insufficient to establish that defendant breached the contract or that the water intrusion directly caused plaintiff's damages. We agree.

¶ 27    Whether a breach of contract occurred is a question of fact, and the trial court's findings will be reviewed against the manifest weight of the evidence standard. *Timan v. Ourada*, 2021 IL App (2d) 100834, ¶ 24. "A judgment is against the manifest weight of the evidence only when an opposite conclusion is apparent or when findings appear to be unreasonable, arbitrary, or not based on evidence." *Judgment Services Corp. v. Sullivan*, 321 Ill. App. 3d 151, 154 (2001). The manifest weight of the evidence standard of review affords the trial court great deference, as it "is in a superior position to determine and weigh the credibility of witnesses, observe witnesses' demeanor, and resolve conflicts in their testimony." *Wade v. Stewart Title Guarantee Co.*, 2017 IL App (1st) 161765, ¶ 59.

¶ 28    Plaintiff must prove the following elements to establish a breach of contract: "(1) the existence of a valid and enforceable contract; (2) performance by the plaintiff; (3) breach of contract by the defendant; and (4) resultant injury to the plaintiff." *Henderson-Smith & Associates, Inc. v. Nahamani Family Service Center, Inc.*, 323 Ill. App. 3d 15, 27 (2001). The third and fourth elements are at issue on appeal. We hold that the trial court's findings that plaintiff established the third and fourth elements of a breach of contract claim were against the manifest weight of the evidence.

¶ 29    The key inquiry concerns the scope of defendant's obligation to disclose recurring water leakage in the basement. Defendant argues that, even if she experienced recurring water leakage in the past, she was not obligated to disclose the same if she reasonably believed the problem was fixed. Defendant cites the following language in the disclosure report to support her position: "These disclosures are intended to reflect the current condition of the premises and do not include previous problems, if any, that the seller reasonably believes have been corrected."

¶ 30    The trial court heard evidence of eight repairs to cracks in the foundation by multiple companies between 1991 and 2019 while defendant lived at the residence. While reviewing the work orders of these repairs at trial, defendant did not dispute that they were part of the "repairs" folder she left at the residence for plaintiff. Defendant testified that she personally arranged for at least two of the most recent repairs, including one in 2019 that was prompted by her discovery of water leaking onto the carpet in the corner of the basement. Defendant also testified that she requested services from U.S. Waterproofing in 2017, two years prior to the sale of the residence, but that she could not remember why. Defendant believed the crack that was repaired in 2017 was also previously repaired years prior and that there may have been a subsequent issue with it. Finally, the trial court heard evidence that the crack that was the subject of litigation was serviced

11

at some point prior to plaintiff's ownership, as plaintiff noted that a portion of the crack near the floor was previously sealed with a mud-like substance. This argument is further supported by the work orders which indicated service crack repairs with the note "originally wall clay repair" on more than one occasion.

¶ 31 Based upon the foregoing evidence, the trial court did not find defendant's testimony denying her knowledge of recurring water leakage to be credible, which we accept for purposes of our analysis. The problem with the trial court's breach of contract verdict was that it premised liability based solely on the extent of defendant's knowledge of the recurring leakages, which the court concluded she had an obligation to disclose. The trial court erred when it stopped its analysis there, as it disregarded the term on the disclosure report that provides, "These disclosures are intended to reflect the *current condition* of the premises and do not include previous problems, if any, that the seller reasonably believes have been corrected." (Emphasis added.)

¶ 32 When making its ruling, the court acknowledged on three separate occasions that it believed defendant thought the issues in the basement were corrected. When discussing the "material defect" inquiry on the disclosure report, the trial court stated that it "firmly believe[d]" that defendant thought that the foundation issues were resolved after each repair and that she did not believe she would be dealing with those issues anymore. Further, the trial court specifically stated with regard to the "recurring leakage" inquiry that defendant probably did think that all issues were resolved. Lastly, the trial court addressed defendant directly and stated, "You fixed everything that was broken. I get that."

¶ 33 While the Disclosure Act does not govern this case given the expiration of the statute of limitations, it nonetheless instructs our analysis. See *Blevins v. Marcheschi*, 2018 IL App (2d) 170340 ¶ 24 (holding that a party may seek recovery for breach of contract based on a disclosure

12

made pursuant to the Disclosure Act). Section 25 of the Disclosure Act provides, in relevant part, "(a) The seller is not liable for any error, inaccuracy, or omission of any information delivered pursuant to this Disclosure Act if *** (ii) the error, inaccuracy, or omission was based on a reasonable belief that a material defect or other matter not disclosed had been corrected ***." 765 ILCS 77/25(a) (West 2022). The language of section 25 of the Disclosure Act, in conjunction with the specific terms of the disclosure report, supports the conclusion that defendant did not have a duty to disclose prior defects that she reasonably believed were corrected.

¶ 34    The trial court explicitly indicated multiple times that it found defendant credible when she claimed that she did, in fact, believe all of the problems related to the foundation and water leakage were corrected. Further, plaintiff failed to introduce any evidence to suggest that defendant did not believe the repairs were effective and permanent, that the companies she hired were not reputable, or that she experienced any subsequent leaks after the repairs. See *Rolando v. Pence*, 331 Ill. App. 3d 40, 47 (2002) (court's finding of fraud based on the seller's failure to disclose material defects in the roof was not against the manifest weight of the evidence where testimony established that previous repairs were not a permanent solution and that it was not reasonable for the sellers to believe otherwise). Indeed, the very fact that defendant left for plaintiff a folder detailing all the prior repairs supports her argument that she believed the leakage issues had been resolved.

¶ 35    Accordingly, the record is devoid of any evidence to support the trial court's finding of breach of contract and subsequent award of damages. See *Nokomis Quarry Co. v. Dietl*, 333 Ill. App. 3d 480, 484 (2002) ("A trial court's judgment following a bench trial will be upheld if there is any evidence supporting it."). For these reasons, the trial court's judgment for plaintiff is reversed because the finding of breach of contract was against the manifest weight of the evidence.

¶ 36                                III. CONCLUSION

¶ 37  For the reasons stated herein, we reverse the judgment of the circuit court of Will County.

¶ 38  Reversed.