2026 IL App (1st) 240979-U

FOURTH DIVISION
Order Filed: March 31, 2026

No. 1-24-0979

NOTICE: This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

_____

| | | |
|---|---|---|
| CORY ARONOVITZ and THE CASINO LAW GROUP, | ) ) ) | Appeal from the Circuit Court of Cook County. |
| Plaintiffs-Appellees, | ) ) | |
| v. | ) ) | No. 21 M 1120822 |
| ARTHUR ENGELLAND and ARTHUR E. ENGELLAND & ASSOCIATES, | ) ) ) | Honorable Kerrie Maloney Laytin, |
| Defendants-Appellants. | ) | Judge Presiding. |

_____

JUSTICE LYLE delivered the judgment of the court.
Presiding Justice Navarro and Justice Ocasio concurred in the judgment.

ORDER

¶ 1    *Held*:    The circuit court did not err by denying the defendant's motion to vacate or finding that the parties entered into a security retainer agreement.

¶ 2    On September 27, 2021, plaintiffs-appellees, Cory Aronovitz and his firm, the Casino Law Group, filed a complaint against defendant-appellants, Arthur Engelland and his firm, Arthur E. Engelland & Associates, alleging Mr. Engelland kept Mr. Aronovitz's retainer payment, despite completing no work on the case for which he was retained and Mr. Aronovitz's repeated requests

for reimbursement. On July 17, 2023, after a bench trial on the merits, the circuit court ruled in favor of Mr. Aronovitz, finding that the parties entered into a security retainer agreement and that Mr. Aronovitz was entitled to a full refund and costs. On September 26, 2023, Mr. Engelland filed a motion to reconsider. On February 13, 2024, the trial court denied the motion to reconsider because it was not presented to the court within the 90-day deadline. On March 14, 2024, Mr. Engelland filed a motion to vacate the February 2024 order, which was denied. On appeal, Mr. Engelland argues that the trial court erred by: (1) denying his motion to vacate and (2) finding that the parties entered into a security retainer agreement. For the reasons that follow, we affirm the judgment of the circuit court of Cook County.

¶ 3                                     BACKGROUND

¶ 4      On September 27, 2021, Mr. Aronovitz and his firm, the Casino Law Group, filed a complaint against Mr. Engelland and his firm, Arthur E. Engelland & Associates. The complaint stated that in April 2018, Mr. Aronovitz was sued in a chancery matter. As a result, he met with Mr. Engelland over dinner and paid him a $5000 security retainer, writing the name of the chancery matter and the docket number of the case in the memo line for the check. According to the complaint, the understanding of the parties was that the retainer was paid for services that were actually rendered, but Mr. Engelland did not file an appearance in the chancery case, file any pleadings, or provide any legal services to Mr. Aronovitz. Beginning on October 31, 2020, Mr. Aronovitz made multiple oral and written requests of Mr. Engelland to return his $5000 check. Mr. Engelland stated that the check was for a classical retainer and that he was not going to return the funds.

¶ 5    The matter was transferred to an arbitration hearing that occurred on February 6, 2023. At the conclusion of the arbitration hearing, the arbitrator found in Mr. Aronovitz's favor and awarded him $4700. Mr. Engelland filed a timely rejection of the arbitration award, and the matter was transferred back to the circuit court for a bench trial on the merits.

¶ 6    On July 17, 2023, the trial court conducted a bench trial. Mr. Engelland did not provide this court with a bystander's report or a transcript of the proceedings in the trial court; therefore, we must rely on the trial court's August 28, 2023 "MEMORANDUM OPINION AND ORDER" for the evidence presented during the trial. The evidence showed the dispute was over a $5000 payment that Mr. Aronovitz paid to Mr. Engelland regarding legal services in a 2018 chancery matter. Mr. Aronovitz testified that on April 24, 2018, the parties met over dinner along with a mutual acquittance, Robert Dominick. Both parties were attorneys at the time of the initial dinner meeting. Mr. Aronovitz said they did not discuss the details of the case, but he wrote a check to Mr. Engelland with the name of the chancery case on the memo line of the check. He further testified that he did not write the words "classical retainer" on the check, that those words were not written on the check in his presence, and that he did not have a discussion with Mr. Engelland about a classical retainer. He did not find out about the "classical retainer" language being on the check until he obtained a bank printout of the check as part of the litigation in this matter.

¶ 7    Mr. Aronovitz testified that after the meeting Mr. Engelland did not complete any work on his case, despite his expectation that Mr. Engelland would bill him by the hour for the work he did. Since the chancery matter was already filed, he did not need an attorney "on call" or to act as a sounding board but needed someone who would represent him in that case. Later, he hired two attorneys to assist him in the chancery matter.

¶ 8     On October 31, 2020, Mr. Aronovitz wrote a letter to Mr. Engelland requesting the return of his $5000, stating that he "had retained different counsel who has appeared and represented me and my firm. You did not appear in the matter. Thank you for your timely return." On January 20, 2021, he sent a letter via fax to Mr. Engelland, which stated:

> "To confirm, you received my letter requesting return of the retainer that I sent you for the above referenced matter. You stated the money I paid you is non refundable pursuant to a concept of 'classical retainer.' I told you that I did not agree to a non-refundable fee of $5000 and I do not accept that you would try to 'make it up by trying to send me work.' You did no work in this matter. I engaged different counsel. You never provided an analysis, sent me a bill of any work completed, you never called me regarding the matter, you did not appear in the matter, never communicated with my counsel of record, and I never asked you to do any work. You did nothing to earn any fee, at all. *** Please consider this a final demand for the return of the entire $5000."

Both letters were admitted as exhibits during the trial.

¶ 9     Mr. Engelland testified that he remembered meeting with Mr. Aronovitz over dinner but could not remember if Mr. Dominick was there, though he was familiar with him. He recalled Mr. Aronovitz talked about the case and the gaming business. He said the chancery complaint contained allegations that could impact Mr. Aronovitz's law license and could subject him to criminal liability. He thought the purpose of the dinner was for him to look at the complaint and give his opinion on whether the lawsuit was defensible. He said that, since becoming a solo practitioner, he has only billed hourly for two or three of his clients and that he normally collected

a non-refundable classical retainer for clients to reserve his services for a later date. He said he told Mr. Aronovitz that he would need a classical retainer to look into the matter and the retainer ensured he would be able to file an appearance if Mr. Aronovitz desired. He asked if Mr. Aronovitz wanted a written contract but Mr. Aronovitz said he did not need one and he understood what a classical retainer meant. He testified that he wrote the "classical retainer" language on the check in the presence of Mr. Aronovitz. He stated that he spent about 10 to 20 hours on the case and took notes on the file, but his notes were destroyed when a pipe in his office broke causing flooding in December 2021. He said he conducted many meetings and phone calls with Mr. Aronovitz to keep him up to date. He claimed that he learned that Mr. Aronovitz hired new counsel about two and a half years after the initial dinner meeting. Mr. Engelland admitted that he received the letters marked as exhibits, and that it was those letters that put him on notice that Mr. Aronovitz had hired new counsel.

¶ 10    Adrian Vuckovich, an expert witness on the rules of professional responsibility regarding retainers, testified on behalf of Mr. Aronovitz. He is a lawyer who has practiced for 32 years and approximately a third to half of his practice is representing lawyers on ethics and disciplinary matters. He testified that a classical retainer is a situation where a client pays the lawyer to be on standby and the expectation is that something will occur in the future which requires the lawyer's services. Accordingly, that type of retainer is used before, not after, a lawsuit is filed. He stated that classical retainers are very rare today and that the customary retainer used is a security retainer. A security retainer is deposited into a client trust fund account and is not earned until work is performed. Lawyers are expected to keep clients informed about the balance of the account.

¶ 11 Mr. Vuckovich testified that under Rule 1.5(c) of the Rules of Professional Conduct, nonrefundable fees and retainers are prohibited. The comments on the rule state that if a retainer is not clearly defined, it is a security retainer and any unapplied funds from a security retainer will be refunded to the client. It was his opinion that the $5000 payment was a security retainer and that the absence of bills meant that no work was performed.

¶ 12 After taking the matter under advisement, the trial court issued its order on August 28, 2023. The court found the testimony of Mr. Aronovitz was more credible than Mr. Engelland, stating that it was unlikely that there was much discussion about the case during a one-hour long dinner that occurred mere days after Mr. Aronovitz was served with a one-inch-thick complaint, especially since the dinner included the presence of a third party. As Mr. Aronovitz was in the middle of litigation, the court stated he did not need an attorney "on call" but an attorney to represent him in the proceedings. The court also found Mr. Engelland claims that he wrote the words "classical retainer" on the check in front of Mr. Aronovitz incredible. The court found that the evidence at trial supported the conclusion that the payment was meant as a security retainer.

¶ 13 The trial court, then, evaluated whether Mr. Engelland earned any of the $5000 security retainer. The court considered Mr. Engelland's admission that he never filed an appearance, did not draft a pleading, or talk to opposing counsel during the two and a half years before learning that Mr. Aronovitz hired other counsel, as evidence that Mr. Engelland performed little if any work on the case. It questioned Mr. Engelland's credibility regarding the work he performed on the case based on his willingness to "make it up to [Mr. Aronovitz] by trying to send [him] work." The court dismissed plaintiff Casino Law Group and defendant Arthur E. Engelland & Associates as parties since the evidence was insufficient for a claim in that plaintiff's favor or a judgment against

that defendant. The court also stated that it did not give any weight to Mr. Vuckovich and his interpretation of the Illinois Rules of Professional Conduct. The court ruled in favor of Mr. Aronovitz, awarding him $5000 plus costs of $596.95.

¶ 14    On September 26, 2023, Mr. Engelland filed a motion for reconsideration but did set the motion on the trial court's call for hearing. On January 26, 2024, Mr. Aronovitz filed a motion to record the memorandum of judgment, stating that the court found in favor of Mr. Aronovitz and against Mr. Engelland in the amount of $5596.95. On February 13, 2024, the trial court granted the motion to record the memorandum of judgment. The court denied the motion stating that Mr. Engelland failed to put his motion to reconsider on the court's call within 90 days pursuant to Cook County Local Rule 2.3.

¶ 15    On March 14, 2024, Mr. Engelland filed a motion to vacate the trial court's February 13, 2024, order and for leave to amend his motion for reconsideration pursuant to section 2-1301. He claimed that due to health issues of his attorney, he was unable to present his motion for presentment. On April 2, 2024, the trial court denied the motion to vacate finding good cause was not shown for the delay in putting his motion to reconsider on the court's hearing call and that he was unlikely to succeed on the merits of the motion to reconsider. On May 2, 2024, Mr. Engelland filed his notice of appeal.

¶ 16                                ANALYSIS

¶ 17    We note that we have jurisdiction to consider these matters, as Mr. Engelland filed a timely notice of appeal following the trial court's judgment. See Ill. S. Ct. R. 301 (eff. Feb. 1, 1994); R. 303 (eff. July 1, 2017).

¶ 18    Mr. Engelland argues that the trial court abused its discretion by denying his section 2-1301 motion to vacate and that the trial court erred by finding that the $5000 payment was a security retainer instead of a classical retainer.

¶ 19    Rule 2.3 of the Circuit Court of Cook County (Cook Co. Cir. Ct. R. 2.3 (eff. July 1, 1976)) states:

> "The burden of calling for hearing any motion previously filed is on the party making the motion. If any such motion is not called for hearing within 90 days from the date it is filed, the court may enter an order overruling or denying the motion by reason of the delay."

¶ 20    "A reviewing court will not disturb the trial court's denial of motions for failure to comply with Local Rule 2.3 unless that decision constitutes an abuse of discretion." *Givot v. Orr*, 321 Ill. App. 3d 78, 91 (2001).

¶ 21    In this case, Mr. Engelland did not appear when Mr. Aronovitz's motion to record the memorandum of judgment was heard on February 13, 2024. Prior to the trial court's order, entered on that day, 140 days had passed since Mr. Engelland filed his motion to reconsider and he had not filed a motion to place the matter on the court's call for hearing. In light of that delay, we cannot find that the trial court abused its discretion when it denied both the motion to vacate and the motion to reconsider.

¶ 22    Assuming *arguendo* that we found the trial court erred by denying the motion to vacate, Mr. Engelland, as the appellant, has the burden to present a sufficiently complete record of proceedings to support a claim of error. *Moenning v. Union Pacific Railroad Co.*, 2012 IL App (1st) 101866, ¶ 38. "In the absence of a complete record, a reviewing court presumes that the order

entered by the trial court was in conformity with the law and had a sufficient factual basis." *Moenning*, 2012 IL App (1st) 101866, ¶ 38. When the record on appeal is incomplete, a reviewing court should presume that the trial court ruled correctly and acted properly. *Moenning*, 2012 IL App (1st) 101866, ¶ 38.

¶ 23 Mr. Engelland did not file a report of proceedings from the trial court nor a bystander's report pursuant to Illinois Supreme Court Rule 323(c) (Ill. S. Ct. R. 323(c) (eff. Dec. 13, 2005)). As a result, we presume that the trial court did not err when finding that the $5000 payment was a security retainer instead of a classical retainer.

¶ 24 Moreover, Mr. Engelland was unlikely to be successful on the merits of his motion to reconsider. In his motion to reconsider, Mr. Engelland flippantly states that the trial court "found how to get a free lawyer." If we ignore the sarcasm, he simply states the trial "court applied facts that were not testified to at trial in reaching her conclusions" and that it misapplied the law without any specification.

¶ 25 A classic retainer "is paid by a client to the lawyer to secure the lawyer's availability during a specified period of time or for a specified matter." *Dowling v. Chicago Options Associates, Inc.*, 226 Ill. 2d 277, 286 (2007). That type of retainer is earned "when paid and immediately becomes property of the lawyer, regardless of whether the lawyer ever actually performs any services for the client." *Dowling*, 226 Ill. 2d at 286. Alternatively, a security retainer "remains the property of the client until the lawyer applies it to charges for services that are actually rendered. Any unearned funds are refunded to the client. The purpose of a security retainer is to secure payment of fees for future services that the lawyer is expected to perform." *Dowling*, 226 Ill. 2d at 286. "The type of retainer that is appropriate will depend on the circumstances of each case." *Dowling*, 226 Ill. 2d at

292. When the parties' intent is not clear from the language of their agreement, the agreement must be construed as a security retainer. *Dowling*, 226 Ill. 2d at 294-95.

¶ 26    "When a party challenges a trial court's bench-trial ruling, we defer to the trial court's factual findings unless they are contrary to the manifest weight of the evidence." *Nakomis Quarry Co. v. Dietl*, 333 Ill. App. 3d 480, 484 (2002). When applying that standard of review, we give great deference to the trial court because it is in the best position to evaluate the credibility of witnesses. *Staes & Scallan, P.C. v. Orlich*, 2012 IL App (1st) 112974, ¶ 35. "A factual finding is against the manifest weight of the evidence when the opposite conclusion is clearly evident or the finding is arbitrary, unreasonable, or not based on evidence." *Samour, Inc. v. Board of Election Commissioners*, 224 Ill. 2d 530, 548 (2007).

¶ 27    Here, there was no written agreement so this court must look at the surrounding circumstances to interpret the parties' intent. As the trial court stated, Mr. Aronovitz was already in the middle of litigation when he had his initial meeting with Mr. Engelland so entering into a classical retainer would not make sense. He needed an attorney to represent him for his pending litigation not for a future lawsuit, which is typical in classical retainer agreements. Also, given the fact that Mr. Engelland offered to send business to Mr. Aronovitz when confronted about returning the payment, it would suggest that Mr. Engelland believed he had to earn his payment and that in some way he was deficient in his performance on the case. See *Dowling*, 226 Ill. 2d at 286 (stating a classical retainer is earned "when paid and immediately becomes property of the lawyer, regardless of whether the lawyer ever actually performs any services for the client"). Additionally, the court found that Mr. Engelland's statements about the work he completed on the case and that he wrote the words "classical retainer" in front of Mr. Aronovitz incredible. With those facts in

mind, we cannot find that the trial court's ruling that the parties entered into a security agreement was against the manifest weight of the evidence. As a result, we do not find the trial court erred by finding in favor of Mr. Aronovitz.

¶ 28                                    CONCLUSION

¶ 29    For the foregoing reasons, we affirm the judgment of the circuit court of Cook County.

¶ 30    Affirmed.